Antonio **FRAGA**, Plaintiff-Appellant,

v.

Otis R. **BOWEN**, M.D., Secretary of Health and Human Services, Defendant-Appellee.

No. 86–2594
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1987.

John R. Heard, San Antonio, Tex., for plaintiff-appellant.

Helen M. Eversberg, U.S. Atty., John F. Paniszczyn, Asst. U.S. Atty., San Antonio, Tex., Harry S. Gold, Atty., Baltimore, Md., for defendant-appellee.

Before CLARK, Chief Judge, and GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Antonio Fraga (Fraga) appeals the district court's summary judgment in favor of defendant-appellee Otis R. Bowen, Secretary of Health and Human Services (Secretary) dismissing Fraga's suit, which sought to set aside the Secretary's denial of his claim for Social Security disability insurance benefits under 42 U.S.C. § 423(a) (1982).

Fraga had applied for the benefits claiming that his back condition and hypertension resulted in complete disability. In his appeal to this Court, Fraga asserts that the Administrative Law Judge (ALJ) made sev-

eral fact-findings not supported by substantial evidence; that he erroneously relied exclusively on the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00–204.00 in determining the existence of other jobs that Fraga could perform; that he erred in failing to consider some of Fraga's impairments and in failing to consider the combined effect of all of his impairments; and, therefore, that he wrongly determined that Fraga was not disabled within the meaning of the Social Security Act. We find that substantial evidence supports the ALJ's factual findings; that he was entitled to rely on the Medical-Vocational Guidelines; that he properly considered, both singly and in combination, each of Fraga's impairments; and, therefore, that he did not err in determining that Fraga was not disabled. Accordingly, we affirm the judgment of the district court upholding the ALJ's decision.

### Facts and Proceedings Below

At the time of the Secretary's decision, Fraga was fifty-three years old. He weighed approximately one hundred eighty-six pounds and was five feet, eight inches tall. He lived with his wife and two daughters. He had attended school for six years in Mexico and could read and write in English. He last worked in March 1983 as a steel fitter/inspector for Engels, Inc. In that job he assembled pieces of steel; cut, burned, and sometimes welded steel; and inspected the work of others. According to Fraga, the job involved frequent lifting or carrying of up to ten pounds, and occasional lifting of up to fifty pounds. Prior to working for Engels, Inc., Fraga had worked since 1957 as a steel fitter for several other companies, except for a three-month period during which he had worked as an insurance collection agent.

Fraga filed an application for disability insurance benefits on December 19, 1983, claiming disability since April 1, 1983, due to a back injury that resulted from a fall at work on March 7th of that year. The Social Security Administration (SSA) denied his claim for benefits initially and upon reconsideration. Fraga subsequently sought a *de novo* hearing before an ALJ, which he received on June 26, 1984. Fraga appeared in person at the hearing and was represented by counsel.

At his June 1984 hearing before the ALJ, Fraga testified that he injured his back lifting some steel pipe at work on March 7, 1983. He said he had worked on and off after his injury, until he was hospitalized in April 1983 due to continued pain, but that he had not worked since the hospitalization. He stated that he was treated in May 1983 with chemical injections. Fraga testified that following his treatment he felt better for awhile, but that pain eventually developed in his hip. He said he was rehospitalized in April 1984, at which time Dr. Warren F. Neely (Dr. Neely), his treating physician, recommended surgery. Instead, Fraga said, he elected to undergo physical therapy and use a TENS unit. He stated that as of the date of the hearing he felt these measures had not eliminated the pain, that his condition had recently worsened, and that he thought surgery would be necessary in the future. Fraga testified that at the time of the hearing he constantly had pain in the center of his back and in his right hip, but that it waxed and waned in intensity. He said his appetite was good, that he normally slept approximately from 10:30 p.m. to 7:30 a.m., that he drove up to twenty or thirty miles a week, and that he could comfortably walk about one-half block, which he did for exercise. He also said he attended church, but had to leave before the service was over due to discomfort from prolonged standing. He did no yardwork nor household chores, and spent most days alternating between sitting in the back yard, walking, and lying down. Fraga testified further that he needed glasses for poor vision and that he had suffered from hypertension since 1977, for which he took medication. He said he also took pain medication for his back.

The medical records indicated that Fraga was first hospitalized following his March 7, 1983, injury on April 5, 1983, at which time he reported pain in his lower back radiating into his left hip and leg. A CT

scan and x-rays revealed no abnormalities, but a report by Dr. Neely noted that Fraga's symptoms were compatible with nerve root irritation on the left side of his spine. Fraga was treated conservatively with medicine and bed rest. He was readmitted on May 15, 1983, with exacerbated symptoms. A lumbar myelogram and CT scan were basically normal, with only a "mild bulge" noted in one intervertebral disk; however, a diskography showed a marked bulge to the left in that disk. After being advised that the available treatment options included surgery and chemical injections, Fraga elected the injections. The hospital discharge report written by Dr. Neely and dated May 20, 1983, noted that Fraga had significantly decreased left hip and leg pain.

Dr. Neely's progress reports showed that he saw Fraga for monthly follow-up visits between June and October 1983. The reports consistently stated that Fraga was doing "very well," that he experienced no hip or leg pain and only mild lower back pain, and that he was to engage in an active walking program. A September 26, 1983, report also noted that a repeat CT scan continued to show a protrusion in the same disk, and that Fraga had fifty percent restriction of motion at the waist upon forward bending.

Dr. Neely released Fraga to "light duty" work on November 7, 1983, which he described as work not involving repetitive stooping or bending, or lifting objects weighing more than thirty-five pounds. Dr. Neely's next report, dated February 6, 1984, contained essentially unchanged findings. It stated that Fraga continued to have mild lower back pain and restricted motion upon forward bending, but that Fraga could do light duty work, and that Dr. Neely again had recommended to Fraga that he seek such employment.

Dr. Neely's reports indicated that in late April 1984, Fraga's condition worsened. Following an April 20, 1984, visit, Dr. Neely reported that Fraga said that over the previous month he had developed pain in his *right* hip, radiating into his thigh, and that activity aggravated his discomfort. A repeat myelogram, x-rays, and CT scan on April 23, 1983, showed a *new* disk protrusion in addition to the one previously noted. Fraga was prescribed pain medication and a walking program, but Dr. Neely's next report, dated June 1, 1984, stated that Fraga's condition had not improved. The pain had persisted and examination revealed slight motor and sensory weaknesses in the right leg. In this report, which was the most recent one submitted to the ALJ, Dr. Neely stated that he prescribed a TENS unit and pain medication, and that if Fraga's symptoms persisted, surgery might be necessary.

Fraga also submitted to the ALJ a medical report, dated January 24, 1984, by Dr. Robert B. Kimmel (Dr. Kimmel). Dr. Kimmel noted that unfortunately he did not have any of Dr. Neely's notes or test results, but that based on Fraga's complaints and on his physical examination of Fraga, he felt Fraga suffered from low back pain that radiated into the left leg. He noted that Fraga complained also of numbness in the left thigh, leg, and foot, and that he walked extremely slowly. His examination revealed mild tenderness in the lumbar region of Fraga's back, but none in the hip or leg. His x-rays showed essentially the same findings that Dr. Neely's had. He also reported that Fraga had limited motion on forward bending. He recommended that Fraga not lift objects weighing over twenty-five pounds and that he not engage in prolonged walking, bending, stooping, or standing.

 In an August 9, 1984, decision, the ALJ found that Fraga suffered from disk problems in his lower back, hypertension, and low back and right leg pain, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Number 4 of the SSA regulations. The ALJ also found that although Fraga was unable to perform his past relevant work as a steel fitter and inspector in the construction industry, the medical evidence failed to demonstrate that Fraga suf-

fered from pain of such severity and duration to prevent him from engaging in all substantial gainful activity. The ALJ determined that based on Fraga's age, education, work experience, and residual functional capacity for light work, the Medical-Vocational Guidelines directed a conclusion of "not disabled," which was not significantly compromised by Fraga's nonexertional limitations, and, therefore, that Fraga was not disabled within the meaning of the Social Security Act.[1]

After the ALJ's decision, Fraga requested review by the Appeals Council. On November 23, 1984, the Appeals Council declined review, making the ALJ's decision the final decision of the Secretary. Fraga then sought judicial review by timely filing a complaint in the United States District Court for the Western District of Texas. Upon submission of cross-motions for summary judgment, and pursuant to the authority vested under 28 U.S.C. § 636(b)(1)(B), a United States magistrate submitted to the district court proposed

"Findings and Recommendation," in which he recommended that the Secretary's motion be granted.[2] The district court on June 30, 1986, adopted the magistrate's Findings and Recommendation and granted the Secretary's motion for summary judgment. Fraga now appeals that decision to this Court.

## Discussion

*Burdens of Proof and Standard of Review*

■ As claimant, Fraga has the burden of proving that he is disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d). *See Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983).[3] Once he has done so, by showing that he is unable to perform his previous work and that his disability has lasted or may be expected to last at least twelve months, the burden shifts to the Secretary to show that there is other substantial gainful employment avail-

---

1. 20 C.F.R. § 404.1520 sets forth a five-step sequential process to be followed by the Secretary in evaluating disability claims. *Hampton v. Bowen,* 785 F.2d 1308, 1311 (5th Cir.1986). If a claimant is found not to be disabled at any step in the process, the remaining steps are not considered. 20 C.F.R. § 404.1520(a). The five steps are: (1) the claimant is not presently working, (2) the claimant has a severe impairment, (3) the impairment is not listed in, or equivalent to, an impairment listed in Appendix 1 of the Regulations, (4) the impairment prevents the claimant from doing past relevant work, and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See Hampton,* 785 F.2d at 1311. In determining whether the claimant can do any other work, the Secretary considers the claimant's residual functional capacity, together with age, education, and work experience, according to the Medical-Vocational Guidelines set forth by the Secretary. *See* 20 C.F.R. § 404.1561.

2. In his proposed Findings and Recommendation, the magistrate reported that approximately two months after the decision by the ALJ, on August 22, 1984, Fraga underwent a laminectomy to correct the problems with his intervertebral disks. The magistrate noted that prior to the November 1984 refusal by the Appeals Council of Fraga's request for review, Fraga had submitted to the Appeals Council a medical report dated August 30, 1984, in connection with this surgery and that the report indicated that Fraga did very well post-operatively, ambulating

the day after the operation. The Appeals Council noted in its November 23, 1984 decision that it had considered the August 30, 1984 report. The August 30, 1984 report was the only post-operative evidence submitted to the Appeals Council.

3. The statute defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A) (1982). Substantial gainful activity is work that involves significant and productive activities for pay or profit. 20 C.F.R. § 404.1510; *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986). According to the Act, physical or mental impairment means an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Moreover, a physical or mental impairment or impairments will be considered disabling "only if [the impairments] are of such severity that [the claimant] is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy." *Id.* § 423(d)(2)(A).

able that the claimant is capable of performing. *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986). If the Secretary adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work. *Id.; Millet v. Schweiker,* 662 F.2d 1199, 1201 (5th Cir. 1981).

■ In reviewing disability determinations by the Secretary, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Secretary's factual findings and whether any errors of law were made. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir.1983). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance.[4] *James v. Bowen,* 793 F.2d 702, 705 (5th Cir.1986). We may not reweigh the evidence or substitute our judgment for that of the Secretary, but we must scrutinize the record in its entirety to ascertain whether substantial evidence does indeed support the Secretary's findings. *Fields v. Bowen,* 805 F.2d 1168 (5th Cir.1986) (per curiam).

*Substantial Evidence*

■ Fraga contends that the evidence does not support the ALJ's determination that his pain was of insufficient severity

and duration to be disabling within the meaning of the statute and, therefore, that the ALJ erred in finding no disability. In support of this contention, Fraga challenges several of the subsidiary factual findings upon which the ALJ relied in determining that Fraga was not disabled. Most of these challenges do not warrant lengthy discussion. Fraga argues first that the ALJ erroneously found that he walked a half block for exercise; however, we think that Fraga's testimony supports the ALJ's findings.[5] Similarly, Fraga's own testimony refutes his assertion that the ALJ erred in finding that he could attend church; Fraga expressly stated to the ALJ that he attended church, but that he left when he had to stand too long. Despite his argument to the contrary, Fraga's testimony also supports the ALJ's finding that Fraga drove his car about twenty to thirty miles a week; at the hearing before the ALJ, Fraga testified specifically that he was able to drive and that he drove up to twenty or thirty miles on a weekly basis.[6]

■ Fraga contends further that the ALJ erred in finding that "no neurological signs" existed that would support Fraga's complaints of severe pain. In making this assertion, Fraga isolates a statement made by the ALJ and quotes it out of context. Read in its entirety, the ALJ's finding that Fraga's pain was not disabling is amply supported by the evidence of record. The ALJ stated:

> "A Well, let's say about a ½ block, no more than that. That's what it amounts to, you know."

4. In determining whether the Secretary's decision is supported by substantial evidence, we consider (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability as testified to by the claimant, and (4) the claimant's age, education, and work history. *Smith v. Schweiker,* 646 F.2d 1075, 1077 (5th Cir.1981).

5. Fraga testified at the hearing as follows:
"Q [ALJ] How much exercising are you doing now?
"A [Fraga] I really can't do much exercise, just to walk a little bit.
"Q How much is a little bit? How far do you walk at a time?

6. Fraga also argues that the ALJ erroneously found that he did not complain of sleep difficulties, that he did not engage in prolonged bedrest, and that his condition did not require use of assistive devices. Because we find that substantial evidence supports these findings by the ALJ, we reject Fraga's arguments to the contrary. Fraga testified that he normally went to bed at 10:30 p.m. and awoke at 7:30 a.m. He indicated neither that his sleep was interrupted nor that he needed significant bedrest in the daytime. Additionally, both Fraga's own testimony and the medical evidence are silent as to Fraga's need for assistive devices.

"Severe pain will often result in certain observable manifestations—such as, loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasm, the use of assistive devices, prolonged bed-rest, or adverse neurological signs. In the case at hand, no such signs exist.

" . . . .

" . . . The evidence of record fails to demonstrate the presence of any pathological clinical signs, significant medical finding, or any neurological abnormalities which would establish the existence of a pattern of pain of such severity that would contraindicate claimant's engaging in all substantial activity."

Thus, the ALJ found not that there were no neurological signs of pain, but that there were no neurological signs of pain or neurological abnormalities sufficient to constitute an impairment lasting, or expected to last, twelve continuous months and so severe as to prevent Fraga from doing all work.[7] The neurological tests performed in May 1983, along with Dr. Neely's clinical findings, based on his examination of Fraga, and Fraga's subjective complaints of severe pain, suggested pain sufficiently severe to preclude Fraga from working at that time; however, neither the neurological tests nor other medical evidence indi-

cated that Fraga's pain remained of disabling severity over the course of the following year. Dr. Neely's reports following Fraga's monthly visits between June and October 1983 stated that Fraga had only *mild* pain in his lower back, no hip or leg pain, and that Fraga was to engage in an active walking program. These reports, combined with Dr. Neely's releases of Fraga to "light work" in November 1983 and February 1984 [8] and the fact that Fraga did not return to Dr. Neely until the end of April 1984, sufficiently support the ALJ's finding that there were no neurological, or other, signs of pain sufficiently severe and long-lasting to be disabling within the meaning of the Social Security Act. Moreover, although the evidence indicated that Fraga's condition worsened in April 1984, we find that Dr. Neely's placement of Fraga into a walking program again and his prescription of use of a TENS unit, together with the availability of corrective surgery, which was considered by both Fraga and Dr. Neely as a viable alternative if the other measures were not successful, provide sufficient support for the ALJ's determination that as of August 9, 1984, Fraga did not have a disabling impairment that *had lasted or* that *was expected to last* for twelve months.[9] We also find that despite

7. In other words, the ALJ found that neither neurological, or other, signs of pain suggested pain of sufficient duration and severity to be disabling within the meaning of the Social Security Act. We note, in passing, that we do not think the situation here is like the one presented by the claimant's mental disorder in *Singletary v. Bowen*, 798 F.2d 818 (5th Cir.1986), where the impairment remained essentially unchanged over time, but waxed and waned in its manifestations.

8. The rule followed by the Fifth Circuit is that "unless there is good cause shown to the contrary the testimony of the treating physician must be accorded substantial weight." *Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir.1981) (quoting *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980)). Fraga suggested none, and we find no reason to doubt the findings of Dr. Neely, who was Fraga's treating physician and who closely followed Fraga's condition throughout the period in question. Although Dr. Kimmel's January 1984 report suggested that Fraga was in more pain than did the roughly contemporaneous reports by Dr. Neely, Dr. Kimmel

prohibited Fraga only from lifting objects weighing over twenty-five pounds and from engaging in prolonged walking, bending, stooping, or standing. Thus, even under Dr. Kimmel's restrictions, Fraga could still have performed light work as defined in the SSA regulations. *See* 20 C.F.R. § 404.1567(b). In any event, since Dr. Kimmel apparently performed only a one-shot evaluation of Fraga's condition, without the benefit of any of Dr. Neely's reports or test results, the ALJ had reason to rely more heavily on the reports of Dr. Neely, as Fraga's treating physician. *Smith*, 646 F.2d at 1081; *Williams v. Finch*, 440 F.2d 613, 616–17 n. 6 (5th Cir.1971). Moreover, it is within the ALJ's discretion to resolve conflicting evidence, including conflicting medical evidence *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir.1983). Hence, Dr. Kimmel's report in no way alters our finding that substantial evidence supports the ALJ's findings.

9. This appeal presents only the issue whether Fraga had a disability, as defined by the Social Security Act, as of August 9, 1984, the date of the decision by the ALJ. *See* 20 C.F.R. § 404.-

Fraga's apparently disabled condition at the time of his August 22, 1984, surgery, the August 30, 1984 medical report stating that Fraga did very well post-operatively and that he was walking the day after the operation sufficiently supports the Appeals Council's determination, implicit in its decision not to review that of the ALJ, that even with the additional medical evidence, Fraga had still not shown he was disabled within the meaning of the statute. *See* 20 C.F.R. § 404.970 (setting forth conditions under which Appeals Council will review a case). Even if Fraga had been disabled in April 1984, for example, it could reasonably be found that his disability had not lasted a year, and was not reasonably expected to last until March 1985.

*Need for a Vocational Expert*

■ Once the ALJ found that Fraga was unable to perform his past work as a steel fitter and inspector, SSA regulations required him to determine whether Fraga could perform any other work available in the national economy. 20 C.F.R. § 404.-1520(f). In making this determination, an ALJ has to consider the claimant's age, education, and work experience, as well as his residual functional capacity. *Id.* § 404.-1561. When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, *see id.* Subpart P., App. 2, and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform. *Id.* § 404.-1569 & Subpart P., App. 2, § 200.00; *see also Fields v. Bowen,* 805 F.2d 1168 (5th Cir.1986) (per curiam); *Dellolio v. Heckler,* 705 F.2d 123, 127–28 (5th Cir.1983). Otherwise, the ALJ must rely upon expert vocational testimony or other similar evidence

to establish that such jobs exist. *Lawler v. Heckler,* 761 F.2d 195, 198 (5th Cir.1985).

■ Fraga argues that since his pain, even if not disabling in itself, constituted a non-exertional impairment, it was improper for the ALJ to rely exclusively on the Medical-Vocational Guidelines in determining that he could do other work. Fraga is correct that pain may constitute a non-exertional impairment that limits the range of jobs a claimant otherwise would be able to perform. *See Carter v. Heckler,* 712 F.2d 137, 141–42 (5th Cir.1983). The ALJ found, however, that Fraga's capacity for the full range of light work was not significantly compromised by non-exertional limitations, including pain. Because we find that substantial evidence supports this finding, we reject Fraga's argument.

The SSA regulations define light work in the following way:

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

The only restrictions placed on Fraga by Dr. Neely in releasing him to "light" work were that he not do work requiring repetitive stooping or bending, or lifting objects weighing over thirty-five pounds. As these are activities not required for a claimant to be capable of doing light work under the regulations, Dr. Neely's medical reports supported the ALJ's finding that Fraga's pain was not a non-exertional impairment that significantly restricted his ability to do light work. We find this evidence sufficient. Since Fraga's vocational characteristics otherwise corresponded to criteria in the Medical-Vocational Guidelines,[10] we

---

981. The ALJ noted in his decision that Fraga will continue to meet the disability insured status requirements of the statute until December 31, 1987, and should Fraga's surgery prove un-

successful or his condition again worsen, he may reapply for benefits.

10. The ALJ found that Fraga's age of fifty-three years was approaching advanced age, *see* 20

conclude that the ALJ properly relied on these Guidelines in determining that other work existed in the national economy which Fraga could perform.

*Combination of Impairments*

■ The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the "disabling effect of each of the claimant's ailments" and the "combined effect of all of these impairments." *Dellolio v. Heckler,* 705 F.2d 123, 128 (5th Cir.1983); *see also, e.g., Ferguson v. Schweiker,* 641 F.2d 243, 250 n. 9 (5th Cir.1981). Fraga argues that the ALJ violated this rule in several ways. We find each of his arguments unpersuasive. Fraga contends first that the ALJ erroneously failed to consider the effect of his mental and emotional impairments. We reject this argument because there simply was no evidence that Fraga suffered from any mental or emotional impairment. Fraga did mention briefly at the hearing that he was embarrassed that his neighbors and daughters did chores he had previously performed. Mere sensitivity about loss of ability to perform certain chores, however, does not even approach the level of a mental or emotional impairment as defined by SSA regulations. *See* 20 C.F.R. Subpart P, App. 1, Listing 12.00. Hence, we find that since Fraga failed utterly to meet his burden of proving that he suffered from any mental impairment, the ALJ had no reason to consider the effects

of such an impairment, either singly or in combination with Fraga's other impairments.

■ Fraga's next argument fails for the same reason. He contends that the ALJ wrongly failed to consider the effect of his impaired vision. We find, however, that Fraga did not meet his burden of proving that his eyesight constituted a physical impairment under the statute. The only evidence at the hearing concerning Fraga's eyesight was a single statement by Fraga that he had trouble seeing objects at close range and might need to see an optometrist for glasses. There was no evidence whatsoever that Fraga's vision problems interfered with his ability to work or that he could not obtain glasses that would fully correct his vision.

■ Finally, Fraga argues that the ALJ erred in failing to evaluate the combined effects of his impairments. We find that the ALJ properly found that Fraga's only impairments were his back condition and his hypertension. We further find that the ALJ fully comported with the requirement that he consider their combined effect in determining whether Fraga was disabled. Since we also find that substantial evidence supports the ALJ's determination that these impairments were not disabling,[11] we reject this argument by Fraga as well.

---

C.F.R. § 404.1563 (defined as between ages fifty and fifty-four); that his sixth grade education was limited or less, *see id.* § 404.1564 (from illiteracy through a seventh grade education); that he had no work skills that were transferable to other skilled or semi-skilled work activities, *see id.* § 404.1568; and that he had the residual functional capacity for light work, *see id.* § 404.1567. The ALJ correctly determined that these characteristics corresponded to criteria in Rule 202.10 of Table No. 2 in the Medical-Vocational Guidelines, which directed a finding of not disabled. *See* 20 C.F.R. Subpart P, App. 2, Table No. 2, Rule 202.10.

Fraga argues that the evidence does not support the ALJ's findings that Fraga had a sixth grade education and that he was literate in both Spanish and English. Although we think that these findings are supported by substantial evidence, since the ALJ based his determination of

nondisability upon Fraga's having a "limited or less" education, these findings are unnecessary to the ALJ's decision to deny Fraga disability benefits.

11. The medical reports stated that Fraga had "mild" hypertension, which was controlled with medication. When the record indicates that hypertension can be controlled with medication, the hypertension is not disabling. *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986). Moreover, although Fraga testified that he had had this condition since 1977, there was no evidence that the hypertension had prevented Fraga from doing any kind of work. In fact, Fraga testified that he had worked from 1957 until his back injury in 1983 as a steel fitter and inspector; hence, the evidence indicated that Fraga was able to, and did, perform heavy work for several years while he suffered from hypertension.

**Conclusion**

The ALJ determined, based on substantial evidence, that although Fraga could not perform his past work as a steel fitter and inspector, Fraga's back condition and hypertension had not precluded him, and was not expected to preclude him, for the requisite period from doing other work available in the national economy. In determining the availability of alternate work, the ALJ properly relied on the Medical-Vocational Guidelines provided in the SSA regulations. The ALJ also properly considered the cumulative and interactive effects of Fraga's impairments in reaching his determination. Accordingly, we affirm the district court's decision upholding the ALJ's determination.

AFFIRMED.