Kernis␣J.␣JOHNSON,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant–Appellee.

No. 88–4521
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1988.

John D. Thompson, Jr., Lafayette, La., for plaintiff-appellant.

John Gough, Chief Counsel, HHS, Office of Reg. Counsel, Dallas, Tex., for defendant-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

PER CURIAM:

Kernis J. Johnson ("Johnson") appeals the district court's judgment affirming the decision of the Secretary of Health and Human Services that Johnson is not "disabled" within the meaning of the Social Security Act ("the Act"), 42 U.S.C. § 301, *et seq.* (1982), as amended. We find that the Secretary's decision to deny benefits to Johnson is supported by substantial evidence, and consequently, we affirm.

## I.

At the time of the administrative hearing, Johnson was 51 years old. He worked most of his life as a tractor operator; plowing, planting, and working in a mill at harvest time. He has a third grade education and is unable to read or write.

Johnson filed applications for disability insurance benefits ("disability") and supplemental security income ("SSI") under the Act alleging disabilities since August 26, 1985, due to a hiatal hernia, depression, nervousness and high blood pressure. Johnson testified at the hearing before the administrative law judge ("ALJ") that he ceased working because of problems with his nerves. He stated that he was nervous, had a loss of appetite, experienced insomnia, and had occasional crying spells. He testified that he had been treated at a mental health center on a bi-monthly basis during the previous year.

The medical evidence indicates that Johnson was hospitalized in August, 1985, for a hiatal hernia. On October 19, 1985, Johnson underwent a consultative examination, performed by Dr. Thomas J. Callender, an internist. Johnson complained of a ventral hernia, nerve problems, mental problems, sleeplessness, anxiety, depression, and low back pain. He also alleged chest pain and shortness of breath. An examination of Johnson's abdomen revealed no guarding and only diffuse tenderness. His mental status examination found Johnson to be alert with good attention and good short and long term memory. Dr. Callender noted that Johnson appeared to have a hiatal hernia which caused intermittent pain. He also had infrequent chest pain which was possibly related to gastrointestinal problems. An electrocardiogram and chest x-ray produced normal results. Dr. Callender also determined that Johnson appeared somewhat depressed. However, he opined that the depression may have been due to Johnson's attitude.

On March 28, 1986, Johnson was examined by Dr. Sam H. Benbow, a psychiatrist. Johnson testified that he had been treated by the Acadiana Mental Health Center for about a year and that his treatment and medication were helpful. Johnson stated that his daily activities included helping his wife with household chores, visiting relatives, spending time at the race track, and watching television. Johnson reported that he was depressed, but did not have crying spells very often. On mental status examination, Johnson was alert and appeared only mildly depressed. His thought processes were logical, although he seemed to be functioning on a somewhat low intellectual and educational level. Dr. Benbow diagnosed Johnson as having an adjustment disorder with mild to occasionally moderate chronic depression.

On May 22, 1986, Anne E. Babineaux, a psychologist at the Acadiana Mental Health Center, reported that Johnson had been admitted to the center on October 30, 1985, complaining of nervous feelings,

sleeping difficulties, pacing, poor appetite, depressed feelings with crying spells, and continuous worry concerning financial difficulties. Johnson's mental status examination yielded a diagnosis of dysthymic disorder and dependent personality disorder. Johnson was prescribed medication for his symptoms. When he was last seen on May 16, 1986, Johnson reported that his medication was helpful for his depressive symptoms and that he was sleeping well, had a good appetite, and experienced no crying spells.

On August 22, 1986, Johnson underwent IQ testing by Dr. Henry J. Lagarde, a clinical psychologist. Results of the Wechsler Adult Intelligence Scale—Revised (WAIS-R) revealed a verbal IQ of 68, performance score of 70, and full-scale IQ of 68. Dr. Lagarde determined that these scores were consistent with intellectual functioning in the upper ranges of mild mental retardation. Dr. Lagarde further noted that Johnson's real intellectual capability might be even higher than the measured score because the score might be affected by depression, low self esteem, and a readiness to internally negate his capabilities. Dr. Lagarde concluded that Johnson's vocational impairment was in a mild range, considering the fact that Johnson had been able to maintain gainful employment for a period of years and was able to manage his own funds.

The ALJ issued a decision on October 22, 1986, finding that Johnson was not entitled to disability insurance benefits or supplemental security income under the Act. The ALJ found that Johnson's mental retardation did not meet the requirements of the Listing of Impairments. The ALJ further determined that Johnson's mental retardation did not prevent him from performing his past work. Subsequently, Johnson submitted results of another IQ test to the Social Security Appeals Council. These results showed IQ scores ranging from 68 to 64. The testing psychologist, Dr. Hunter

B. Shirley, expressed the opinion that Johnson was disabled pursuant to the Listing of Impairments. The appeals council found that this report did not provide a basis for changing the decision of the ALJ and thus denied Johnson's request for review of the hearing decision. Johnson filed a timely complaint in the district court seeking judicial review of the Secretary's final decision pursuant to 42 U.S.C. § 405(g). The case was referred to a United States Magistrate who recommended that the Secretary's decision be affirmed. The district court adopted the magistrate's report and recommendation and affirmed the Secretary's decision in an order dated June 17, 1988. This appeal followed.

## II.

In reviewing the Secretary's decision to deny disability and SSI benefits,[1] this court is "limited to a determination that the Secretary's decision was supported by substantial evidence existing in the record as a whole and that no errors of law were made." *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987). In applying the "substantial evidence" test, we must carefully scrutinize the record to determine if, in fact, such evidence is present. However, we may not reweigh the evidence in the record, nor try the issues *de novo,* nor substitute our judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision.[2] *Id.; Fields v. Bowen,* 805 F.2d 1168, 1169 (5th Cir.1986). Substantial evidence means more than a scintilla, but less than a preponderance and is:

[S]uch relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible

1. The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler,* 759 F.2d 432, 435 (5th Cir.1985).

2. 42 U.S.C. § 405(g) provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

choices" or "no contrary medical evidence."

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983) (citations omitted).

■ An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Act.[3] *Neal,* 829 F.2d at 530; *Fields,* 805 F.2d at 1169. Once the claimant satisfies his initial burden, the Secretary then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. *Neal,* 829 F.2d at 530. In determining whether or not a claimant is capable of performing substantial gainful activity, the Secretary utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who meets or equals a listed impairment in appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

A finding that the claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Secretary's analysis. *Lovelace v. Bowen,*

813 F.2d 55, 58 n. 15 (5th Cir.1987); *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984).

### III.

■ Relying on the results of Johnson's second submitted IQ test, the testing psychologist, Dr. Shirley, opined that Johnson was disabled pursuant to the Listing of Impairments at §§ 12.04 and 12.05. In order to meet the applicable level of severity for the listing at § 12.04 in Appendix 1, a claimant must meet the requirements in both subsections A and B, which are:

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anahedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, dilusions or paranoid thinking;

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a

---

3. Title XVI of the Social Security Act, 42 U.S.C. § 1381, provides for supplemental security income for the disabled. Title II of the Act provides for federal disability insurance benefits. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to

those governing the determination under a claim for supplemental security income. *See Davis v. Heckler,* 759 F.2d 432, 435 n. 1 (5th Cir.1985); *Rivers v. Schweiker,* 684 F.2d 1144, 1146 n. 2 (5th Cir.1982); *Strickland v. Harris,* 615 F.2d 1103, 1105–06 (5th Cir.1980).

timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which caused the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

20 C.F.R., Part 404, Subpart P., Appendix 1, § 12.04.

While the medical evidence establishes that Johnson showed symptoms of depression, he does not demonstrate at least four of the symptoms in subsection A. Although Johnson informed physicians that he had appetite and sleep disturbances, he reported to the mental health care center that his medication enabled him to sleep well and have a good appetite. Further, the medical evidence reflected that Johnson suffered no recent weight loss from his alleged appetite disturbances and was described as a moderately overweight male at 5'9" and 205-½ pounds. In addition, Dr. Benbow reported that Johnson's concentration appeared adequate, and that his thought processes were coherent, logical, goal directed, and that there was no looseness of associations. Dealing with the factors in subsection B, Dr. Benbow reported that Johnson's interpersonal relationships, interests, and activity levels appeared to be adequate, and that there was no gross personal deterioration. Dr. Legarde determined that Johnson's vocational impairment was considered to be in a mild range, and that Johnson seemed to be functioning at an optimal level considering the combination of his abilities and his personality/emotional functioning. Only Dr. Shirley determined that Johnson was unable to work because of his current emotional disturbance.

The pertinent sections of 12.05 include:

C. A valid verbal performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional significant work related limitation of function; or

D. A valid verbal, performance, or full scale IQ of 60 to 69 inclusive or in the case of autism, gross deficits of social and communicative skills with two of the following:

1. Marked difficulties of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete a task in a timely manner in work settings or elsewhere; or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adapted behaviors).

20 C.F.R., Part 404, Subpart P., Appendix 1, § 12.05.

Regarding section 12.05, the Secretary acknowledged that Johnson suffers from mild mental retardation; with IQ scores, as measured by Dr. Legarde, between 60 and 69. However, as shown above, in order to meet the Listings, with IQ scores in this range, Johnson must have a physical or other mental impairment imposing additional and significant work-related limitation of function. Dr. Legarde found plaintiff's scores within the upper ranges of mild mental retardation; however, he specifically opined that Johnson's real intellectual capability was possibly higher than those scores. Finally, he determined that the vocational limitation which Johnson's intellectual deficiency imposed was only mild.

The ALJ acknowledged that Johnson had an IQ score of 68, but found that neither his physical impairments nor his other mental impairments imposed any additional and significant work-related limitation of function. Johnson did not demonstrate that he has additional impairments which significantly affect his ability to work. Johnson experienced some depression, but there is substantial evidence that this condition was not significantly disabling during the time period being adjudicated by the ALJ.

Johnson alleged that he became disabled in August of 1985; however, reports. from Johnson's treating source, the Acadiana Mental Health Center, indicate that he was first seen there in October, 1985, with complaints related to depression, including difficulty sleeping, a poor appetite, and crying spells. Yet he improved with treatment, and by May, 1986, he was sleeping well, had a good appetite, and experienced no crying spells.

Dr. Benbow, who examined Johnson in March, 1986, also found that Johnson had improved with treatment. By the time of this examination, Dr. Benbow determined that Johnson's interpersonal relationships, activity levels, and interests were at their preillness levels. In other words, at that point, depression was not seriously affecting Johnson on a day to day basis. Dr. Benbow also noted that Johnson's memory and concentration were adequate on examination. Furthermore, Dr. Callender also found Johnson to be alert, with good attention and good short and long term memory upon his examination of Johnson in October, 1985. Thus, the evidence shows that, while Johnson has some depression, with treatment his depression had improved to such an extent that it did not seriously affect him within a year from the time he alleges he became disabled. *See Pate v. Heckler,* 777 F.2d 1023, 1026 (5th Cir.1985) (a claimant is not disabled if his disability does not last for twelve continuous months).

■ Johnson notes that Dr. Louis Alvarez, a psychiatrist who Johnson had seen in 1982 and 1983, expressed the opinion in March, 1983, that Johnson had a conversion reaction with chronic severe incapacity and a passive dependent personality and had shown little improvement with treatment at that time. It is clear that Dr. Alvarez's report is not relevant to the Secretary's decision because it does not deal with the time period being adjudicated. Johnson was off work during the time he saw Dr. Alvarez, but returned to work until August, 1985. *See Oldham v. Schweiker,* 660 F.2d 1078, 1086 (5th Cir.1981) (a doctor's opinion is not relevant when he did not

treat the claimant during the time of the alleged disability).

Johnson attempts to circumvent the rule that an impairment must be disabling for a twelve month period by relying on the *Singletary* exception. In *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986), the court recognized that a claimant can have a mental impairment which manifests itself over a long-term period, even if the claimant can work for brief periods during that time. However, the court held "[o]f course, as required by the regulations, a claimant must present medical evidence which indicates that his mental condition is a long-term problem and not just a temporary setback." *Id.* at 821.

■ In the instant case, Johnson had some mental problems in 1982 and 1983. He stopped work in September, 1982, but was able to resume work in 1983. He worked throughout 1984 and did not stop working again until August, 1985. Johnson's depression only interrupted his ability to work for a brief period of time. He responded to treatment within twelve months. Consequently, his condition does not meet the durational requirement of the Act. *Pate,* 777 F.2d at 1026.

Johnson concedes that the reports from his treating source, the Acadiana Mental Health Center and the consulting psychiatrist, Dr. Benbow, support the Secretary's conclusion that he responded to anti-depression medication and therefore, was not severely disabled for the required twelve month period. Yet, he argues that it was improper for the Secretary to accept these reports and reject those of Dr. Shirley, a psychologist who examined plaintiff on only one occasion.

■ In *Robertson v. Ribicoff,* 215 F.Supp. 254 (E.D.La.1963), the court held that the denial of a social security claim was supported by substantial evidence where four doctors testified that the plaintiff had no disability and only one psychiatrist testified that the plaintiff was incapacitated from employment. Substantial evidence in the present case reveals that Johnson's condition is not disabling. The appeals council's conclusion that the determi-

nations of the other physicians outweighed the claims of one doctor is substantiated by the evidence in the record. Citing *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir. 1987), Johnson notes that the Secretary may give less weight to the opinion of a treating physician if good cause is shown. While this is true, the operative word in that statement is "may." It is, of course, for the Secretary to decide what weight to accord various medical reports. Since the opinion of a treating physician is generally entitled to considerable weight, the Secretary was justified in relying on the report of Johnson's therapist, who indicated that, by Johnson's own reports, he had responded well to medication for his depression. *See Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1977).

■ Johnson also suggests that it was improper for the Secretary to accept the opinion of Dr. Benbow, who examined Johnson on one occasion, over that of Dr. Shirley, who also examined Johnson on only one occasion. Here, Johnson is simply asking us to reweigh the evidence to determine which of two conflicting reports to accept. However, we have consistently held that the Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case. *Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir.1987). *See also Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir.1983) (to find no substantial evidence there must be no contrary medical evidence).

■ Johnson also alleges physical complaints, especially abdominal pains. We previously have held that pain, in and of itself, can be a disabling condition under the Act, but only when it is "constant, unremitting, and wholly unresponsive to therapy or treatment." *Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir.1983); *Chaney v. Califano,* 588 F.2d 958, 960 (5th Cir.1979). The ALJ found that Johnson's subjective complaints of pain were not supported by the medical evidence and that any abdominal problems he experienced did not significantly affect his ability to work. In fact, the only objective evidence that Johnson

experienced any abdominal problems during the relevant time is a note that he had been hospitalized for abdominal pain and was found to have a hiatal hernia. A physical examination showed only mild tenderness of the abdomen. The ALJ found that this pain was not disabling. It must be remembered that "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Elzy v. Railroad Retirement Bd.,* 782 F.2d 1223, 1225 (5th Cir.1986); *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir.1983). The Secretary's finding as to the debilitating effect of Johnson's subjective symptoms is entitled to considerable judicial deference. *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986).

Johnson's pain was not shown to be of such severity, duration, or frequency as to be disabling. He has a hiatal hernia, a condition which would not be expected to produce disabling pain, and physical examination proved to be unremarkable. Further, Johnson is not significantly limited in his daily activities by pain. In addition, Johnson's stomach problems have not been attributed to any impairment, and the medical evidence reflects that Johnson's high blood pressure was controlled and did not show any signs of end organ damage.

Substantial evidence supports the Secretary's conclusion that Johnson has no physical or additional mental limitations that significantly limit his ability to work. Johnson has not shown marked restriction in his daily activities, marked difficulty in maintaining social functioning, frequent deficiencies of concentration, persistence or pace, or repeated episodes of deterioration in a work-like setting. Therefore, the ALJ correctly found that Johnson did not meet the requirements of sections 12.04 or 12.05 of the Listing of Impairments.

■ Finally, the Secretary's finding that Johnson could perform his past work as a tractor driver despite his mental retardation is supported by substantial evidence. Primarily, this finding is supported by the fact that Johnson has been able to work as

a tractor driver for several years despite his mental retardation. *See Fraga v. Bowen*, 810 F.2d 1296, 1306 n. 11 (5th Cir.1987) (evidence showed that plaintiff was able to work for years despite impairments). Additional evidence supporting this finding includes the opinion of Dr. Legarde who, after testing Johnson's IQ, determined that he had only a mild vocational impairment based on his mental deficiency. Johnson argues that he could not perform his past work because of abdominal pain and because noise from the tractor "aggrevates his nerves." However, since the Secretary rejected Johnson's complaints of pain as not credible, he determined that Johnson did not have pain of such severity as to limit his ability to perform his past work. Similarly, the ALJ found that Johnson did not have a significant limitation of function due to a mental disorder except for his limited IQ. Thus, since the ALJ did not find Johnson's subjective complaints to be credible, Johnson's argument that the Secretary failed to consider how his complaints would affect his ability to perform his past work is meritless.

There is substantial evidence that Johnson can perform his past work as a tractor driver despite the fact that his tested IQ is within the range of mild mental retardation. Johnson does not have an impairment of the severity of the Listing of Impairments because he does not have a physical or other mental impairment that imposes additional limitations which limit his ability to work. While Johnson occasionally experiences depression, the evidence demonstrates that he responded well to treatment within one year. Medical records from the mental health clinic confirmed that Johnson's reported symptoms disappeared with medication, and his reported activities indicate that he is able to lead a normal life despite his depression. Johnson's mental status examination did not reveal any significant deficiencies. If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987).

## IV.

Substantial evidence of record, considered in light of the applicable legal standards, supports the Secretary's decision that Johnson is not disabled under the Act. On the basis of a thorough examination of the record, we agree that Johnson failed to meet his burden of proof with respect to allegations of total disability. Therefore, the district court's decision is

AFFIRMED.