# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-51160
Summary Calendar

ANTONIO HERNANDEZ,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-416

Before SMITH, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

The Commissioner of Social Security ("Commissioner") denied Antonio Hernandez disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Hernandez challenged the denial in district court. The court affirmed the Commissioner's decision, a decision that Hernandez appeals. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Factual and Procedural History

Hernandez is a forty-year-old, Hispanic male with limited English communication skills: he can speak, read, and write some English but has trouble understanding English speakers who speak too quickly. In June 1995, he sustained a back injury performing his dry-walling job, obtained care through a workers' compensation claim, and received orders from his treating physicians to refrain from work. In early 1996, however, he received clearance to return to work with some lifting restrictions.

Hernandez's condition deteriorated, and in June 1997 he was diagnosed with degenerative disc disease and underwent back surgery. Thereafter, he received several post-surgery evaluations from the Texas Workforce Commission ("TWC"). In January 1998, he was found to have a 12% total body impairment rating, which increased to 17% in April 1998. In May 1999, however, TWC found that he had only a 7% impairment rating.

No record exists of Hernandez receiving further treatment for his ailment until 2004, when Dr. Elena Arizmendez examined him in a referral by the Texas Rehabilitation Commission. Hernandez also obtained a second opinion during that year from his former physician, Dr. Albert Molnar. The lack of consistent treatment to that point was allegedly because Hernandez was unaware that he could continue treatment through workers' compensation and sought treatment in Mexico instead.

On April 5, 2004, Hernandez applied for disability benefits due to back pain and leg weakness. After the Commissioner denied the application initially and on reconsideration, an administrative law judge ("ALJ") held a hearing on December 14, 2005, pursuant to Hernandez's request. The ALJ found from Hernandez's testimony and the medical evidence that Hernandez's degenerative disc disease, chronic pain syndrome, and failed back syndrome are "severe" impairments as defined by 20 C.F.R. § 404.1520(c), but that Hernandez retains the residual functional capacity to lift ten pounds occasionally and less than ten

pounds frequently, to stand or walk (not more than one city block) two hours in an eight-hour workday at one-hour intervals, and to sit six hours in an eight-hour workday at one-hour intervals with the option to stand and stretch at his workstation. In addition, the ALJ found that although Hernandez is "unable to communicate in English" within the meaning of 20 C.F.R. § 404.1564, he is "able to read, write, and understand simple English instructions."

A vocational expert testified that an individual with Hernandez's particular restrictions would be able to perform a significant range of sedentary work as well as some jobs classified as light work under 20 C.F.R. § 404.1567. Nevertheless, the ALJ told the vocational expert to identify only sedentary jobs available to Hernandez. The vocational expert testified that Hernandez would be able to perform several different jobs, including those of bench assembler, escort driver, surveillance monitor, addresser, and cutter and paster.

The ALJ specifically inquired as to whether Hernandez's English skills would be sufficient for each of the jobs suggested by the vocational expert. The ALJ rejected the vocational expert's opinion that Hernandez could perform the job of cutter and paster on grounds that it required more English reading proficiency than Hernandez possessed. The ALJ further rejected the possibility of escort driver because it might require Hernandez to sit without a break for more than an hour at a time. The ALJ found, however, that Hernandez would be capable of performing the job of bench assembler, addresser, or surveillance monitor, and that each of these jobs exists in significant numbers in the national economy. As a result, the ALJ found that Hernandez is not disabled under 20 C.F.R. § 404.1520(g) and is not entitled to disability benefits.

Thereafter, on June 8, 2006, Hernandez filed his complaint with the district court seeking review of the final decision pursuant to 42 U.S.C. § 405(g). A magistrate judge recommended that the decision be affirmed, and the district court adopted the recommendation on September 17, 2007. Hernandez appeals.

## II. Standard of Review

Our review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence supports the decision; and (2) whether the decision comports with relevant legal standards. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). If substantial evidence supports the Commissioner's decision, the findings are conclusive and the decision must be affirmed. Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); see also Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994). It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999) (citation omitted). As a result, this court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal quotation marks and citation omitted).

## III. Burden of Proof

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.[1]

---

[1] The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing

Hernandez carried the burden of proof under the first four parts of the inquiry. Leggett, 67 F.3d at 564. The burden of proof then shifted to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that Hernandez could perform. Fraga v. Bowen, 810 F.2d 1296, 1301–02 (5th Cir. 1987). Once the Commissioner identified suitable alternative employment, the burden of proof shifted back to Hernandez to prove that he could not perform the alternative work identified. Id. at 1302. Throughout the process, however, the ultimate burden of establishing disability remained with Hernandez. Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).

## IV. Discussion

Hernandez alleges three points of error in the district court's determination that substantial evidence supports the final administrative decision that he was not disabled within the meaning of the Social Security Act: first, the Commissioner failed to properly evaluate the physician opinions of record in assessing Hernandez's residual functional capacity; second, the Commissioner's finding that Hernandez is able to perform other work existing in significant numbers in the national economy lacks substantial evidence; and third, the Commissioner failed to properly assess Hernandez's credibility.

### A. Physician Opinions of Record

Hernandez argues that the Commissioner failed to properly consider the treating and examining physicians' opinions in determining his residual functional capacity. As an initial matter, he contends that the Commissioner erred in finding that "the medical record provides little or no evidence as to the claimant's treatment for his impairments from 1999 forward" in light of Dr. Molnar's 2004 report, which explains that Hernandez sought treatment in Mexico during the interim because he was unaware that he could obtain further

---

past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a), 416.920(a).

workers' compensation treatment in the United States. As the district court noted, however, Dr. Molnar's report indicates that the only record of this treatment in Mexico is a physician's letter given to him by Hernandez, which is not included in the record. In addition, the district court correctly observed that even considering Dr. Molnar's report and Hernandez's testimony regarding the alleged treatment in Mexico, the record is bereft of any specific facts regarding any medical treatment or diagnosis between Hernandez's last treatment by Dr. Molnar in October 1998 and the end of his insured period in December 2001. As a result, the Commissioner did not err in finding a lack of reliable evidence of medical treatment after 1999.

Hernandez further argues that the Commissioner erred in discounting Dr. Molnar's and Dr. Arizmendez's opinions in their 2004 reports regarding the extent of his disability.[2] Dr. Molnar's opinion is that "it is very reasonable . . . that [Hernandez's] pain . . . is due to his old injury and his old surgical procedure," and that "[Hernandez] is probably going to have a difficult time finding employment, either sitting or standing, or bending or twisting. He simply cannot do these activities." Dr. Arizmendez's opinion is that Hernandez "is unable to lift more than half a gallon of milk and . . . is developing gout in his hands," and that "[h]is return to work . . . will likely be confounded by the lifting restrictions, the need for frequent changes in position . . . and limitations with activities . . . given his development of gout."

It is well settled that although the "opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability," such evidence is not conclusive; rather, the ALJ bears

---

[2] Hernandez also points to a pre-surgery 1997 report of his treating physician, Dr. George Tipton, wherein Dr. Tipton states that he discussed Hernandez's upcoming surgery and told him that "the more sedentary his occupation the more likely it would be to have long-term relief of symptoms." This opinion, however, directly supports the residual functional capacity finding for a significant range of sedentary work.

"the sole responsibility for determining the claimant's disability status." Greenspan, 38 F.3d at 237 (internal quotation marks and citations omitted). As this court has explained:

> [W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott [v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)]. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

Greenspan, 38 F.3d at 237; see also 20 C.F.R. § 404.1527(d) (stating that in weighing medical opinions, the ALJ should consider the examining relationship, the treatment relationship, supportability, consistency with the record, and specialization).

Here, as noted by the district court, Dr. Molnar's and Dr. Arizmendez's 2004 reports, conducted almost three years after the expiration of Hernandez's insured period, are relevant only insofar as they bear on his condition between 1997, the alleged onset date of the disability, and 2001, the date on which his benefits ended. See Anthony, 954 F.2d at 295 (explaining that to prove entitlement to disability benefits under Title II, the claimant must prove not only that he is disabled, but also that he became disabled before the end of the insured period). In addition, while both Dr. Molnar and Dr. Arizmendez opined that Hernandez's physical symptoms would severely restrict his ability to work, the ALJ was entitled to disregard these conclusory statements and to rely instead on the more specific medical diagnosis in Dr. Arizmendez's report that

Hernandez suffers from chronic pain syndrome and failed back syndrome.[3]

Contrary to Hernandez's argument, moreover, the ALJ did not "reject" Dr. Arizmendez's opinion but afforded it "the greatest weight," incorporating most of the limitations outlined in her evaluation in his residual functional capacity finding. Although Dr. Arizmendez limited Hernandez to working only four hours a day, the ALJ was nonetheless justified in finding that Hernandez had the capacity to work eight hours a day, particularly in light of Dr. Arizmendez's statement elsewhere in her report that he could sit for a total of six to eight hours a day and of the treatment records closer in time to the insured period.

Also contrary to Hernandez's argument, as a consultative examiner instead of a treating physician, Dr. Molnar's opinion is not accorded the controlling weight given to treating physicians.[4] In addition, as the district court emphasized, the record contains several assessments made by him during Hernandez's insured period that note "contradictions between the Claimant's efforts and the results of the examinations." Accordingly, the Commissioner properly considered the physician opinions of record, incorporated the limitations he found consistent with the weight of the evidence as a whole, and made a residual functional capacity finding that is supported by substantial evidence.

B. Ability to Perform Other Jobs Cited

Hernandez also argues that in finding that he is able to perform other work available in significant numbers in the national economy, the Commissioner erred by identifying jobs that are beyond his residual functional

---

[3] The ALJ was also entitled to discount Dr. Molnar's and Dr. Arizmendez's opinions regarding Hernandez's physical symptoms upon finding that "[t]here are no objective clinical or laboratory findings to support [Hernandez's] allegations of ongoing physical limitations."

[4] The Regulations define a "treating" physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. Given that Dr. Molnar examined Hernandez only two times during the insured period (and only one time thereafter), the record does not reflect that they had an ongoing treatment relationship.

capacity. He first contends that a conflict exists between the vocational expert's testimony regarding sedentary bench assembler positions and the classification of assembly positions as requiring light or medium exertional activities in the Dictionary of Occupational Titles ("DOT"). Again, however, as noted by the district court, where a vocational expert's "unchallenged testimony" indicates that the claimant can perform the jobs identified, the ALJ is entitled to rely upon that testimony despite any conflict with the DOT.[5] See Carey v. Apfel, 230 F.3d 131, 146–47 (5th Cir. 2000). In any event, the district court is also correct that Hernandez has failed to introduce evidence that the job of bench assembler requires lifting over ten pounds or is a skilled position.

Hernandez further claims that he cannot perform the work of an addresser or a surveillance monitor as defined in the DOT because he is "illiterate in English" and such jobs "require fluency in English." The record reflects, however, that the ALJ did not find that Hernandez is illiterate; rather, substantial evidence supports the ALJ's finding that Hernandez is "able to read, write, and understand simple English instructions." Hernandez completed an initial disability report himself and indicated that he could speak, understand, read, and write in English. He also testified at the hearing that he could speak some English but has trouble understanding English speakers who speak too quickly, and that he was able to understand English speakers who gave simple instructions when he performed his previous work. In addition, the record reflects that the ALJ was aware of Hernandez's limited English skills, was careful to inquire into the English proficiency required by each job identified by the vocational expert, and was satisfied that Hernandez could perform the work decided upon. Accordingly, substantial evidence supports the Commissioner's finding that Hernandez possesses the capacity and the English skills to perform the jobs of bench assembler, addresser, and surveillance monitor.

---

[5] Hernandez did not challenge or cross-examine any of the vocational expert's testimony at the hearing.

## C. Hernandez's Credibility

Finally, Hernandez argues that the Commissioner's finding that he lacked credibility was not based on the proper legal standard because the ALJ simply declared him not credible without supporting justification. This court has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation." Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

Here, the ALJ expressly recognized that he must consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on requirements of 20 C.F.R. § 404.1529 and SSR 96-7p." In so doing, he gave Hernandez "the benefit of the doubt as to his subjective allegations of pain" but gave the "greatest weight" to Dr. Arizmendez's opinion. As the district court explained, Dr. Arizmendez's report acknowledges that Hernandez has significant impairment but notes inconsistencies between Hernandez's subjective account of his symptoms and her diagnostic observations. As a result, the ALJ did in fact consider Hernandez's subjective complaints but ultimately determined that they were inconsistent with Dr. Arizmendez's evaluations—and with those of the "[o]ther treating practitioners [who had] released him to heavier levels of exertion" for that matter. An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence. Anthony, 954 F.2d at 295; Jones v. Heckler, 702 F.2d 616, 621 n.4 (5th Cir. 1983). Accordingly, the Commissioner applied the correct legal standard and substantial evidence supports his finding regarding Hernandez's credibility.

## V. Conclusion

Finding that substantial evidence and relevant legal standards support the final administrative decision to deny Hernandez's application for disability benefits, we AFFIRM.