Hubert **FEDISON**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

**Civ. A. No. 89–1005.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

May 15, 1990.

---

John D. Thompson, Jr., Acadiana Legal Service Corp., Lafayette, La., for plaintiff.

Josette Cassiere, Asst. U.S. Atty., Shreveport, La., for Secretary.

## JUDGMENT

SHAW, District Judge.

This matter was referred to United States Magistrate, Mildred E. Methvin, for her Report and Recommendation. After an independent review of the record in this case, the Court concludes that the Report and Recommendation of the magistrate is correct and this Court adopts the conclusions of the magistrate.

IT IS ORDERED, ADJUDGED AND DECREED that the Secretary's motion for summary judgment is DENIED, and that plaintiff be restored benefits as of the date of termination.

## REPORT AND RECOMMENDATION

MILDRED E. METHVIN, United States Magistrate.

This social security appeal was referred to me for the purpose of review, report and recommendation pursuant to this court's standing order of March 3, 1986.

## BACKGROUND

Hubert Fedison was born on December 9, 1931, has a 10th grade education, and has worked in the past as a longshoreman and truck driver (TR. 54; 36). He applied for and was granted a period of disability following a favorable decision by an ALJ on October 16, 1981 (TR. 190–192). His date of onset was March 18, 1980, and benefits were granted due to a status post right medial meniscectomy and lumbar laminectomy (TR. 193). On December 14, 1987, the SSA informed Fedison that his case was being reviewed and scheduled an interview (TR. 194). Fedison was informed on March 17, 1988, that his benefits were being terminated and that he was considered no longer disabled as of March, 1988 (TR. 195). Fedison requested reconsideration and a hearing was scheduled before a disability hearing officer on May 20, 1988 (TR. 203). The hearing officer noted that Fedison was difficult to question as he talked incessantly and rambled (TR. 212). The hearing officer found that Fedison's medical condition had improved and that he was not disabled on June 1, 1988 (TR. 220–225).

Following an administrative hearing on August 11, 1988, the ALJ issued a decision on September 29, 1988, upholding the termination of benefits as of March, 1988 (TR. 34–53; 15–20). The Appeals Council denied review on March 6, 1989, and reaffirmed the denial on April 25, 1989, following receipt of additional evidence, making the ALJ's decision the final decision of the Secretary from which plaintiff now appeals (TR. 3–4).

The ALJ found as follows: Fedison has status post right medial meniscectomy and lumbar laminectomy, but he does not have an Appendix I impairment; the impairments present as of October 16, 1981, the time of the most recent favorable medical decision, were the same; the medical evidence establishes that there has been improvement in Fedison's medical impairment as of October, 1981; the medical improvement is related to his ability to work; his current impairment is severe; his "testimony and demeanor at the hearing indicate

gross exaggeration of symptoms;" current medical records do not support the degree of limitation he alleges; he has the residual functional capacity to perform the physical exertion requirements of work except for frequent lifting of more than 50 pounds; that are no non-exertional limitations; he is unable to perform his past relevant work as a stevedore or longshoreman; beginning in March, 1988, Fedison had the residual functional capacity to perform the full range of medium work; considering Fedison's residual functional capacity, age, education, and work experience, he is no longer disabled; his disability ceased in March, 1988 (TR. 19–20).

## ISSUES

Fedison cites the following errors of the Secretary: 1) the ALJ's determination that he was no longer disabled is not based on substantial evidence; 2) the ALJ applied an incorrect standard in assessing his residual functional capacity; 3) the ALJ inadequately considered his subjective complaints of pain; and 4) the ALJ erred in applying the Medical–Vocational guidelines in light of his non-exertional impairments.

## STANDARD OF REVIEW

This court's review "is limited to a determination that the Secretary's decision was supported by substantial evidence existing in the record as a whole and that no errors of law were made." *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

> * * * However, we may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision ...

*Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988). *See also Fields v. Bowen*, 805 F.2d 1168, 1169 (5th Cir.1986); *Neal, supra*, 829 F.2d 528 at 530. "Substantial evidence is more than a scintilla, but less than a preponderance, and is:

> ... such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (citations omitted).

## FINDINGS AND CONCLUSIONS

The Disability Benefits Reform Act of 1984 amended the Social Security Act to provide for a standard of review for terminating disability benefits. Pub.L. 98–460. The Secretary prescribed regulations to implement the standard of review for determining whether disability has continued. Disability or SSI benefits may be terminated if there is substantial evidence of at least one of the following:

1. There has been any medical improvement in the individual's impairment[s] [other than improvement not related to his or her ability to work] and he or she is able to engage in substantial gainful activities (SGA);

2. That new medical evidence and a new assessment of the individual's residual functional capacity demonstrate that, although there has not been any medical improvement in the individual's impairment[s], (a) he or she is the beneficiary of advances in medical or vocational therapy or technology, related to his or her ability to work, and is able to perform SGA or (b) he or she has undergone vocational therapy, related to his or her ability to work, and is able to perform SGA;

3. That, as determined on the basis of new or improved diagnostic techniques or evaluations, the individual's impairment[s] is not as disabling as it was considered to be at the time of the most recent prior disability determination and that, therefore, the individual is able to engage in SGA; or

4. As demonstrated on the basis of evidence on the record at the time of a prior favorable disability determination or newly obtained evidence relating to that

determination, a prior determination was in error.

20 C.F.R. Secs. 404.579 and 404.1579 and 404.1588–1598 (1985). Regardless of the new medical improvement provisions, disability can be found to have ceased if the prior determination was fraudulently obtained or if the beneficiary is engaged in SGA, cannot be located, or fails, without good cause, to cooperate with a continuing disability review or to follow prescribed treatment. 20 C.F.R. Sec. 404.1594(e).

In determining whether a claimant has regained the capacity to perform substantial gainful activity, the Secretary uses an eight-step sequential analysis:

1. If a claimant is engaged in substantial gainful activity, disability will be found to have ended regardless of the medical findings.

2. If the claimant's impairment meets the severity of an impairment listed in Appendix I, his disability will be found to continue.

3. If the impairment does not meet the Appendix 1 listings, whether there has been medical improvement as shown by a decrease in medical severity must be determined. If so, Step 4 is considered. If there has been no decrease in medical severity, there has been no medical improvement, and Step 5 is considered next.

4. If medical improvement is found, whether the improvement is related to the claimant's ability to do work must be considered. To make this determination, whether or not there has been an increase in the residual functional capacity based on the impairment that was present at the time of the most recent favorable medical determination must be considered.

5. If it is found at Step 3 that there has been no medical improvement or at Step 4 that the medical improvement was not related to the claimant's ability to work,

a determination as to whether the exceptions apply must be made. If none apply, disability will be found to continue. If one of the first group of exceptions to medical improvement applies, Step 6 is considered. If an exception in the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended.[1]

6. If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, whether all the claimant's current impairments in combination are severe must be determined. The evidence shows that the current impairments in combination do not significantly limit the claimant's physical or mental abilities to do basic work activities, the impairments will not be considered severe and the ·claimant will no longer be considered disabled.

7. If the impairment is severe, and a claimant can still perform his past work, disability will be found to have ended.

8. If a claimant's impairment prevents him from performing his past work, other factors including his age, education, past work experience, and residual functional capacity are considered to determine if other work can be performed.

20 C.F.R. Sec. 404.1594(f)(1–8) (1985):

The review may cease and benefits may be continued at any point if the Secretary determines that there is sufficient evidence to find that the claimant is still unable to engage in substantial gainful activity. 20 C.F.R. Sec. 404.1594(f).

■ In the present case, the ALJ found that Fedison "may not" be able to perform his past relevant work, but that he had regained the residual functional capacity to perform the full range of medium work, thus ending his analysis at Step 8.

---

**1.** The second group of exceptions to medical improvement may be considered at any point in this process. They include:

(1) A prior determination was fraudulently obtained;

(2) The claimant does not cooperate with the SSA;

(3) The SSA was unable to find the claimant; and

(4) The claimant fails to follow prescribed treatment.

20 C.F.R. Sec. 404.1594(e)(1–4).

To reach his conclusion, the ALJ was required under the regulations to assess Fedison's RFC at the time of his last favorable medical decision, (in this case, the ALJ's decision dated October 16, 1981), and then compare the new RFC to his previous RFC. Unless an increase in the current RFC is based on changes in signs, symptoms or laboratory findings, any medical improvement that has occurred will not be considered to be related to the claimant's ability to do work. 20 C.F.R. Sec. 404.-1594(c)(2). When new evidence shows a change in signs, symptoms and laboratory findings establishes that both medical improvement has occurred and the functional capacity to perform basic work activities has increased, medical improvement related to the ability to work has occurred.

It is therefore necessary to evaluate the findings of the ALJ as of October 16, 1981, the date of Fedison's last favorable decision:

Additionally, claimant sustained injury to his cervical spine in the accident on March 18, 1980 and is to undergo surgery on October 15, 1981. He, also, suffered from a fungus condition of the right foot and has a psychiatric condition with shaking spells and extreme anxiety which has existed since March of 1980, the date of his accident. He also traumatically loss the two fingers next to his thumb on his left nondominant hand, many years ago.

Since March 18, 1980, he testified that he has been suffering from low back pain radiating to both legs with numbness of both legs, neck pain radiating to the right dominant arm with numbness and cramping of the arm, knee pain and abdominal pain the area of his hernia repair. His right arm according to his testimony, cannot be raised more than shoulder level.

He takes pain medication and lies down four to five times daily in order to alleviate his symptoms. He also walks with a limp and has difficulties in walking, standing, sitting, bending and stooping. His medication makes him drowsy and he has difficulty with constipation secondary to his medication.

In evaluating claimant's various conditions it appears that the medical evidence is consistent with his testimony that he has suffered from lumbar pain, cervical pain, knee pain and abdominal pain since the date of his accident. He has had a history of low back pain which was apparently aggravated by the accident on March 18, 1980. It was necessary to surgically treat the individual problems separately and therefore, he underwent the ventral hernia repair first, then the knee surgery, then the lumbar surgery and now will undergo surgery for his cervical disc disease.

It is felt, therefore, that his various conditions existed concurrently in such severity since the date of his accident to preclude any gainful employment. He obviously still experiences pain in the cervical and lumbar area to a rather severe degree and it was also obvious at the hearing that he suffers from a psychiatric condition which has to date been treated with medication.

Therefore, his conditions cannot be considered different problems existing and disabling at different times, but rather concurrent problems and thus, he is entitled to a Period of Disability commencing on the date of his accident March 18, 1980 and to Disability Insurance Benefits.

At the hearing, a vocational expert testified that if claimant were restricted to sedentary work which required limited bending and stooping and no repeated use of the right dominant arm because of the cervical problems, and alternating standing and sitting, there would be only one job he could perform and that would be as a security worker. However, claimant was sentence to a prison term in 1965 for armed robbery and therefore could not qualify for this position.

It is suggested that if this matter be reevaluated at a later date and claimant appears to be recovered somewhat from his various impairments, that psychological testing and psychiatric consultative examination be obtained since it appears

that he may have difficulties, in these respects. (TR. 191–192).

Dr. Claude Williams, an orthopedic surgeon, examined Fedison on May 16, 1980, two months after Fedison suffered an injury at work (TR. 297). Fedison had been hospitalized after the injury for repair of an abdominal hernia. Dr. Williams diagnosed strained ligament in the right knee and recommended an arthrogram (TR. 297–298). Results of the arthrogram performed on May 22, 1980, were negative (TR. 299).

Fedison underwent a right meniscectomy on August 22, 1980, and was followed at the Tulane Medical Center Clinic for physical therapy (TR. 286). He continued to suffer pain in his right knee (TR. 285).

On January 20, 1981, Dr. Brunet, an orthopedic surgeon, reported that Fedison had persistent bouts of patellar tendonitis secondary to his quadriceps muscle not being completely rehabilitated (TR. 284). He continued to attend physical therapy.

On July 1, 1981, Dr. Thomas S. Whitecloud, an associate professor with Tulane Medical Center, reported that Fedison had severe degenerative lumbar disc disease and also some cervical spondylosis. He also diagnosed a ruptured disc which would require future surgery. He opined that Fedison remained permanently and totally disabled for any type of gainful employment (TR. 282).

Dr. R.C. Llewellyn, a neurologist, evaluated Fedison's injuries on August 18, 1981 (TR. 301). He found that Fedison had not improved since his last examination in May, 1981. He diagnosed post-operative lumbar disc; status, post-operative bilateral knee surgery; and symptomatic disc problems in the neck. He advised Fedison to proceed with cervical disc surgery (TR. 301–302). He stated that Fedison could not return to work, and that he was totally disabled from working outside the home.

Dr. Llewellyn completed a physical capacities evaluation on October 9, 1981 (TR. 303). He found that Fedison could sit, stand, and walk no longer than two hours during an eight-hour day and that he could lift and carry up to 10 pounds occasionally.

Fedison was restricted from pushing and pulling arm controls and fine manipulations with his hands as well as his feet. He was unable to bend, squat, crawl, climb or reach.

Dr. Neal Terezakis, a dermatologist, reported on October 8, 1981, that Fedison suffered an outbreak of dermatitis complicated by secondary pyoderma (TR. 304).

Dr. Whitecloud summarized Fedison's medical history on March 3, 1983 (TR. 307). Fedison underwent anterior cervical fusion at the C5–6 level in October, 1981. He had done "quite well" since the procedure. Dr. Whitecloud followed Fedison on December 22, 1981, Fedison's arm pain had resolved with only occasional discomfort in his neck. His brace was discontinued and he began an exercise program. Fedison was last seen on April 6, 1982, when he reported that his neck had completely recovered. Dr. Whitecloud assigned Fedison a 10% permanent physical impairment based on the cervical fusion and restricted Fedison from performing heavy physical manual labor although he could perform sedentary type work (TR. 308).

Dr. Ronald Matz, an occupational therapist, examined Fedison on November 30, 1987 (TR. 310). Fedison complained of knee pain and swelling, worse with walking and standing for long periods. He also complained of stiffness in the left shoulder and the left side of his neck, as well as chronic low back pain. He took no medication. There was good range of motion about his head and neck. There was crepitation in both knee joints without swelling. Straight leg raising tests were normal, with good range of forward flexion and lateral bending. There were no lumbar muscle spasms. Dr. Matz concluded:

> Mr. Fedison is totally and permanently medically disabled for the duties of a longshoreman and he should be retired on pension. He has a cervical discectomy and fusion, lumbar laminectomy and discectomy, bilateral cartilage surgery both knee joints.

(TR. 311).

Dr. Fred C. Webre, an orthopedic specialist, examined Fedison at the request of the Social Security Administration on February

25, 1988 (TR. 313). Fedison complained of pain in his neck, shoulders, arms, and low back. His knees were painful most of the time and tended to "lock". Coughing hurt the low back, and there was numbness and weakness in both legs. Sitting caused the most back pain. He took no medication. Dr. Webre found full range of neck motion, with 30 degrees flexion, 30 degrees extension, and 30 degrees rotation. There were no muscle spasms. Fedison complained of pain with any motion. In the lumbar area, Fedison flexed 65–70 degrees, extended 10–15 degrees, and laterally bent 15–20 degrees. There were no muscle spasms on palpation, though Fedison complained of tenderness over the area. There was no guarding of the low back during movement. Sciatic stretching and straight leg raising tests were negative. Several spine x-rays showed a solid interbody fusion at the C5–6 level with excellent position and alignment. X-rays of both knees showed slight medial joint line narrowing. Lumbar spine x-rays showed no definite evidence of fenestration. There was a small spur at the inferior margin of the L–5 level, but no specific narrowing of the interspaces. Dr. Webre stated:

> This patient has considerable complaint throughout the examination. He has no specific evidence of radiculopathy at present.

(TR. 315).

Fedison submitted a list of medications on July 21, 1988, showing that he took Ibuprofen and Flexeril for arthritis and muscle spasms, as well as Extra Strength Tylenol. He takes Tussi-organidin for cough (TR. 320).

Dr. Thomas Butard, an orthopedic specialist, issued a statement on August 9, 1988, stating that Fedison was being treated for orthopedic complaints from his neck down to his lower back and for pain in his right knee. He assigned Fedison a disability of 30% secondary to his neck and back problems (TR. 322).

Dr. Butard issued a second statement on February 27, 1989, relating that he had examined Fedison on December 2, 1988 (TR. 7). At that time, he released Fedison from his care with a 25% disability to his back.

Fedison submitted a statement on February 16, 1989 that he had an appointment to see Dr. Whitecloud on March 3, 1989 (TR. 8–9). No further medical records appear in the record.

Fedison testified at the administrative hearing on August 11, 1988, that he was unable to work due to degeneration of his spine and arthritis throughout the length of his spine (TR. 37). The pain is intermittent and increases if he stoops or tries to lift over 15 or 20 pounds (TR. 37–38). He felt that it was worse now than when he first began with disability benefits. He stood up during the hearing due to the pain (TR. 39). He is unable to climb stairs. Bending and stooping cause pain. He stopped taking medication in 1983 due to the side effects (TR. 40). The medication reduced his sexual drive and caused nausea and nervousness. He reported that he saw Dr. Eusie LaFonts in New Orleans on November 30, 1987, but no report was in the record (TR. 41). Both of his knees become painful and "lock" (TR. 42). He complained of arthritis in all his joints and bones. He has difficulty using his left hand because two fingers were amputated when he was 9 years old (TR. 43). He spends his day watching television, reading the Bible, taking short walks, and doing minor household chores (TR. 44). He is unable to mow the grass and does not fish. His duties as a longshoreman included standing eight hours and lifting 100 pound sacks. He also lifted cases of goods weighing up to 80 pounds (TR. 45). He is able to walk four blocks and has very little tolerance for sitting (TR. 47). He gets some relief from pain from soaking in a hot tub (TR. 49). He has difficulty sleeping. He has trouble with his nerves and was prescribed Valium but he had to stop taking it (TR. 50). He feels depressed about not being able to work. He prefers not being around people. He lives alone in the country and does not visit (TR. 51). He is "aggravating" and hard to get along with because of the pain. He left the city because noise bothered him (TR. 52).

Fedison contends that the ALJ's finding that his impairment had improved to the extent that he was able to perform the full

range of medium work is not based on substantial evidence.

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. Sec. 404.1567(c).

The Social Security Rulings[2] state:

The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8–hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

*Social Security Ruling* 83–10, at p. 180.

Since Fedison's last favorable decision in 1981, he has undergone a cervical fusion resulting in a residual 10% permanent physical impairment. In addition, he has a 10% permanent disability as a result of surgery on both knees. While there is substantial evidence supporting the ALJ's finding that Fedison's impairment had improved since the initial finding of disability, the improvement is not related to Fedison's ability to do work. In light of the residuals of his past surgeries, it is clear that Fedison has not regained the residual functional capacity to perform the full range of medium work. Flexibility of the knees as well as crouching are required. Frequent bending and stooping are also required.

■ The question remains whether Fedison has the residual functional capacity to perform light work. The Fifth Circuit has held that the court need not remand such a case if the record clearly demonstrates the claimant's capacity to do an unlimited range of work in another category, light work in this case. *Carter v. Heckler*, 712 F.2d 137, 141 (5th Cir.1983). Remand is appropriate only upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning claimant's disability based on the record before the court." *Ferguson v. Schweiker*, 641 F.2d 243, 250, n. 8 (5th Cir.1981).

If the record shows that Fedison can do the full range of light work, then the Appendix 2 guidelines would direct the result in the case. The medical records in this case clearly demonstrate Fedison's ability to do an unlimited range of light work. However, Fedison is 59 years old, which is defined as "advanced age" for purposes of applying the guidelines, and has a limited 10th grade education. Under Rules 202.02 or 202.01, a finding of disabled is directed for an individual with Fedison's age, education, and work experience.

---

**2.** 42 U.S.C. § 1302 mandates the making and publishing of rules and regulations by the Secretary. Although these rulings do not have the effect of law, they interpret the Act and are binding on the Secretary. *Wagner v. Finch*, 413 F.2d 267 (5th Cir.1969), *See also, Hall v. Schweiker*, 660 F.2d 116, 119 n. 4 (5th Cir.1981).

Rules 201.01 and 201.02 indicate a finding of disabled for claimants whose RFC is limited to sedentary work and whose past work was unskilled, semiskilled, or skilled with those skills considered nontransferable. It is clear that Fedison's past jobs as a longshoreman and truck driver did not provide skills transferable to sedentary jobs. Accordingly, it is my recommendation that the Secretary's motion for summary judgment be denied, and that Fedison be restored benefits as of the date of termination.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the District Judge prior to a final ruling. FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION CONTAINED IN THIS REPORT WITHIN TEN (10) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.

Lafayette, Louisiana, this 12th day of April, 1990.