**Margaret L. DOERR, by Marilyn MERKEL, POA, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No. 94–1279.

United States District Court, C.D. Illinois.

Sept. 14, 1995.

---

Margaret L. Doerr, Washington, IL, pro se.

Gerard A. Brost, Asst. U.S. Atty., Peoria, IL, Donna Morros Weinstein, Anne T. Galkin, U.S. Dept. of Health & Human Serv., Chicago, IL, for defendant.

## *ORDER*

MIHM, Chief Judge.

Before the Court are Plaintiff's Motion for Summary Judgment [# 10], which seeks either a reversal of the Commissioner's decision or a remand to the Social Security Administration for further hearing, and Defen-

dant's Motion to Affirm [# 12]. For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion to Affirm is GRANTED.

*Background*

Marilyn Merkel ("Merkel") is Margaret Doerr's daughter and has power of attorney for her mother. In May 1990, Doerr fell and sustained fractures to her left hip and arm. (Tr. 228). She was hospitalized at St. Francis Medical Center from May 2, 1990 through May 30, 1990 for these injuries. During her hospitalization, Doerr underwent surgery on her left arm. *Id.* On May 30, 1990, Doerr was transferred from St. Francis Medical Center to Fondulac Woods Health Care Center (hereinafter "Fondulac").[1] *Id.* at 17. Medicare paid for the first month of Doerr's stay at Fondulac, from May 30, 1990 to June 30, 1990. *Id.* at 95. In a letter dated June 27, 1990, however, Fondulac notified Merkel that it had determined Medicare would no longer pay for the services rendered to her mother. *Id.* at 17. Merkel acknowledged receipt of the notice on July 15, 1990 and requested an intermediary review. *Id.* at 18. This procedure requires Aetna, the intermediary, to review the request for benefits and render a determination on the merits of the claim. Aetna denied payment for the services rendered to Doerr after July 1, 1990. *Id.* at 94. Aetna found that she did not require daily skilled nursing care and based its denial of coverage on the Medicare law which delineates the type of post-hospitalization care available in non-certified nursing homes. *Id.*

Doerr appealed the denial of benefits, and again Aetna denied Medicare benefits. *Id.* at 96, 99–100. In its second notification, Aetna stated two reasons for the denial: (1) that as of July 1, 1990, Fondulac placed Doerr in a non-certified bed and (2) she no longer required skilled nursing care or rehabilitation services. *Id.* at 100. Aetna determined that Fondulac was liable for the period between July 1, 1990 and July 15, 1990, the date upon which Merkel acknowledged receipt of Fondulac's notice that Medicare would not cover services rendered after July 1, 1990. *Id.* Aetna explained that since Fondulac knew or reasonably should have known that the services rendered Doerr after July 1, 1990 would not be covered under Medicare but failed to notify either Doerr or Merkel until July 15, 1990, the provider should bear the cost during that period of time. *Id.*

Doerr filed a Request for Hearing before an Administrative Law Judge ("ALJ") on February 18, 1992. *Id.* at 102. A hearing was held before ALJ Donald R. Jensen on June 17, 1992. *Id.* at 50. The ALJ's opinion identified the general issue before him as whether payment may be made under Part A (Hospital Insurance Benefits) of Title XVIII of the Social Security Act, Medicare, for the services rendered at Fondulac from July 1, 1990 through September 6, 1990. *Id.* at 37. The specific issue addressed by the ALJ's decision was whether Doerr required and received skilled nursing services. *Id.* The following is a summary of the ALJ's findings:

1. Following a qualifying hospital stay, the beneficiary was a patient at Silkwood [Fondulac] Healthcare Center from July 1, 1990, through September 6, 1990.
2. Beginning July 1, 1990, the beneficiary received custodial care.
3. By letter dated July 15, 1990, the beneficiary acknowledged receiving written notification that neither skilled nursing care nor rehabilitation services were required and that therefore payment could not be made under title XVIII of the Act for these services.
4. The beneficiary did not know and could not reasonably have been expected to know that the services rendered were noncovered prior to July 15, 1990, and is therefore not liable for the cost of the services rendered prior to July 15, 1990.
5. The provider knew or could have been expected to know that the services rendered to the beneficiary from July 1, 1990, through July 15, 1990, were non-

1. Fondulac Woods is now known as Silkwood HealthCare Center but, for the sake of consistency, will be referred to throughout this Order as Fondulac.

covered and is therefore liable for the cost of the noncovered services beginning July 1, 1990, through July 14, 1990.

*Id.* at 43–44. The ALJ cited § 1879 of the Social Security Act ("the Act") for the proposition that Plaintiff should not be held liable for the services performed between July 1, 1990 and July 15, 1990, because she did not have foreknowledge that the services rendered were not covered under Medicare. *Id.* at 43. ALJ Jensen found Doerr liable for the period between July 15, 1990 and September 6, 1990. *Id.* at 43–44.

Plaintiff requested a review by the Appeals Council on November 2, 1992. *Id.* at 11. On January 12, 1994, the Appeals Council granted review of the ALJ's decision pursuant to 20 C.F.R. § 404.970(a)(1), finding part of the ALJ's decision an error of law. *Id.* at 289–290. The Council held that § 1879, upon which the ALJ relied to apportion liability to Fondulac, applies only to cases in which the sole basis for Medicare's denial of benefits is either § 1862(a)(1) or (9) of the Act. *Id.* at 289. Specifically, the Appeals Council wrote:

In order to obtain reimbursement, Medicare patients must be placed in a certified portion of the facility, and must require *and* receive skilled nursing or other skilled rehabilitation services on a daily basis which as a practical matter can be provided only in an [sic] skilled nursing facility on an inpatient basis.

*Id.* The Appeals Council further held:

[W]hen a beneficiary received a non-covered level of care while occupying a non-certified bed, as in this case, the denial of coverage is based on occupancy of a non-certified bed.

*Id.* Thus, the Appeals Council found, based on the record, that Doerr received a non-covered level of care while occupying a non-certified bed. *Id.* The Appeals Council concluded that Medicare denied coverage on the basis that she occupied a non-certified bed. *Id.* Having found this, the Appeals Council determined that an apportionment of liability under § 1879 was not available. *Id.* The Appeals Council's findings were as follows:

1. The beneficiary was admitted to a non-certified bed at Silkwood Health Care Center from July 1, 1990 to September 6, 1990.

2. Beginning July 1, 1990, the beneficiary required and received non-covered custodial care.

3. The limitation of liability provisions under Sec. 1879 of the Act do not apply in this case.

*Id.* at 8.

Plaintiff's Motion for Summary Judgment is not accompanied by a separate memorandum of law. The Motion contains neither a detailed recitation of the facts with reference to supporting material in the record nor citation to controlling or instructive case law. However, as Doerr proceeds in this matter *pro se,* the pleadings will be liberally construed. Plaintiff concedes that after July 1, 1990, Doerr received only custodial and not skilled nursing services. However, Merkel asserts that she was misled regarding the level of care her mother received during the relevant period of time. Doerr also argues that Fondulac had a duty to provide prompt notification to Medicare that after July 1, 1990, the services rendered to her were not covered. She contends that Fondulac breached its duty by failing to forward a notice to Medicare for nearly a year. The parties do not dispute that the primary issue in the case at bar is who should bear the cost of Doerr's care between July 1, 1990 and September 6, 1990. (Plaintiff's Mot. for Summ. Judgment, at 4; Defendant's Mem. in Support of Summ. Judgment, at 7).

## *Discussion*

### A. *Plaintiff's Motion for Remand*

The Motion for Summary Judgment requests that "... the decision of the Administrative Law Judge and the Appeals Council be returned to the Social Security Administration for further hearing...." Only two types of remand are available to the Plaintiff pursuant to 42 U.S.C. § 405(g), Sentence Four or Sentence Six. *Melkonyan v. Sullivan,* 501 U.S. 89, 95–97, 111 S.Ct. 2157, 2162, 115 L.Ed.2d 78 (1991); *see also Shalala v. Schaefer,* 509 U.S. 292, 296–98, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993); *Travis v. Sullivan,* 985 F.2d 919, 921 (7th

Cir.1993). Plaintiff does not clearly state upon which basis she seeks a remand. In order to construe the pleadings liberally, this Court will look to each of the alternatives to determine if the matter may be remanded under § 405(g). First, Plaintiff has not made any showing that new and material evidence exists which was not considered by the SSA; therefore, a Sentence Six remand is not available. Second, as this Court affirms the decision of the Secretary in all respects, no basis exists upon which to remand the matter under Sentence Four.

### B. Motion for Summary Reversal

 The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Given these parameters, this Court finds that the decision of the Appeals Council is supported by substantial evidence in the record and does not contain an error of law.

Defendant submits that Medicare denied Doerr coverage for two reasons: (1) she did not occupy a certified bed and (2) she was receiving only custodial care. Support for this argument may be found in the second letter Aetna sent to Merkel regarding the denial of benefits. (Tr. 99). The record also indicates that Doerr occupied a non-certified bed between July 1 and September 6, 1990. *Id.* at 122. As noted, Plaintiff concedes that only custodial care was provided during the relevant time period. Doerr makes no attempt to demonstrate that the Appeals Council's decision was not supported by substantial evidence. Therefore, this Court finds the Appeals Council's decision supported by substantial evidence.

Part A of Title XVIII of the Social Security Act, Medicare, provides for the payment of hospital insurance benefits. 42 U.S.C. § 1395, *et seq.* Hospital insurance benefits include payment for up to 100 days of skilled nursing care or rehabilitation in a skilled nursing facility ("SNF"). 42 U.S.C. § 1395y(a)(9). In order to qualify for these payments, a beneficiary must require and receive skilled nursing or rehabilitation services on a daily basis for a condition which necessitated inpatient hospital treatment. 42 C.F.R. § 409.31(b)(1). The Health Care Financing Administration Regulations require that skilled nursing or rehabilitation services:

(1) are ordered by a physician; (2) require the skills of technical or professional personnel such as registered nurses or licensed practical (vocational) nurses, physical therapists, occupational therapists, and speech pathologists or audiologists; and (3) are furnished directly by, or under the supervision of, such personnel.

42 C.F.R. § 409.31. The Regulations further define skilled nursing care as "so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). As an example, skilled nursing care is distinct from custodial care, which generally involves administration of oral medication, assistance with walking, eating, and dressing, and supervision of repetitive exercises intended to improve strength, endurance, or range of motion. 42 U.S.C. § 1395y(a)(9). The facilities which render skilled nursing care must be "certified" under statutory criteria. 42 U.S.C. § 1395i–3(a), 1395i–3(g), and 1395x(j). Medicare may deny coverage to a person who does not occupy a certified bed.

Section 1879(a) of the Act authorizes the Secretary of Health and Human Services ("the Secretary") to shield beneficiaries from liability if the beneficiary had no reason to know that the services administered were not covered by Medicare. 42 U.S.C. § 1395pp(a). This type of indemnification is only available in two situations. The section provides, in part:

(a) Conditions prerequisite to payment for items and services notwithstanding determination of disallowance

Where—

(1) a determination is made that, by reason of section 1395y(a)(1) or (9) of this title ... payment may not be made under part A or part B of this subchapter for any expenses incurred for items or services furnished an individual by a provider of services ... and

(2) both such individual and such provider of services or such other person, as the case may be, did not know and could not reasonably have been expected to know, that payment would not be made for such items or services under such part A or part B of this subchapter,

then to the extent permitted by this subchapter, payment shall ... be made for such items or services ... as though section 1395y(a)(1) and 1395y(a)(9) of this title did not apply.

42 U.S.C. § 1395pp(a)(1). Additionally, if the Secretary determines that the provider knew or had reason to know that a payment would not be made for certain services and the beneficiary had no such knowledge, the Secretary may indemnify the beneficiary and recover from the provider. 42 U.S.C. § 1395pp(b).

■ Indemnification is only available to a claimant when benefits are denied by reason of either § 1395y(a)(1) or § 1395y(a)(9). Section 1395y(a)(1) does not apply to the case at bar as it concerns medical care and services which are not reasonable or necessary. Section 1395y(a)(9) provides, in relevant part:

(a) Items or services specifically excluded

Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B of this subchapter for any expenses incurred for items or services—

(9) where such expenses are for custodial care.

42 U.S.C. § 1935y(a)(9). Reading § 1395pp(a)(1) in conjunction with § 1395y(a)(9) indicates that when Medicare bases a denial of payment on the custodial nature of the care rendered and the provider knew or had reason to know that the services would not be covered, while the beneficiary did not, the beneficiary would be indemnified for payments made to the provider. See 42 C.F.R. § 411.402(a).

Congress chose to limit § 1879's offer of indemnification to two situations. 42 U.S.C. § 1395pp(a)(1). Defendant interprets § 1879 as applicable only in those situations where Medicare denies coverage solely upon the custodial level of care provided. The Defendant argues that § 1879 is inapplicable to cases in which more than one factor contributed to a denial of coverage. Thus, in the case at bar, because Doerr's benefits were denied due to her occupancy of a non-certified bed in addition to the level of care administered to her, the Defendant submits that § 1879's offer of indemnity is not available.

This Court finds the agency's interpretation of § 1879 reasonable, in that the relevant portion of the statute refers only to the denial of coverage for custodial care. It is not unreasonable to assume that if Congress had intended other sections of the Act to entitle a beneficiary to indemnification by the Secretary, it would have clearly enumerated those sections. Thus, the agency's interpretation of § 1879 will be followed, and this Court will not order the provider to assume the cost of Doerr's care between July 1, 1990 and July 15, 1990. As to the period between July 15, 1990 and September 6, 1990, once Merkel received notice that the services rendered to her mother would not be covered by Medicare, she may not argue that the Act requires an apportionment of liability. See 42 U.S.C. § 1395pp(a) & (b).

Although this Court believes this ruling is correct, as a matter of law, this Court also believes that, as a matter of equity and fairness, a certain injustice permeates this holding. Neither Doerr nor Merkel knew or could have known about the change from skilled nursing care to custodial care until July 15, 1990. The spirit of the regulations seems to support indemnification of the beneficiary. Nevertheless, § 1879 provides for indemnification in only two situations, neither of which are present in this case.

■ As a final matter, Plaintiff also argues that:

> The evidence introduced in these proceedings reflects that it is the responsibility of the nursing home to give prompt notice to Medicare of the nursing home's belief that skilled nursing services for a particular patient are no longer necessary.... Fondulac Woods and their representatives did not do so for approximately one year.

(Mot. for Summary Judgment, at 4). Merkel submits that Fondulac's failure to promptly notify Medicare that the services rendered to her mother were not covered prevented her from challenging the decision to discontinue skilled nursing care. Merkel also contends that Fondulac Woods misled her regarding the level of care her mother received between July 1, 1990 and September 6, 1990.

This Court reviews the denial of Medicare benefits to determine whether the Secretary's position is supported by substantial evidence and is not based upon a legal error. 42 U.S.C. § 1395ff(b)(1). Assuming Plaintiff's assertions are true, the outcome of this case would not change. The arguments summarized above do not illustrate either a lack of substantial evidence or an error of law and, as such, may not form the basis for a summary reversal.

### Conclusion

As the Plaintiff in the case at bar failed to demonstrate that the Secretary's decision is not supported by substantial evidence in the record and this Court finds the agency's interpretation of § 1879 permissible, the Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion to Affirm is GRANTED. This case is terminated.