**HOSPITAL SERVICE DISTRICT NO. 1 OF THE PARISH OF LAFOURCHE d/b/a Lady of the Sea General Hospital**

v.

**Tommy G. THOMPSON, Secretary of the Department of Health and Human Services**

**No. Civ.A. 03–0415.**

United States District Court, E.D. Louisiana.

Aug. 25, 2004.

Richard A. MacMillan, Nicholas Gachassin, III, Gachassin Law Firm, Lafayette, LA, for Plaintiff.

Sharon Denise Smith, U. S. Attorney's Office, New Orleans, LA, Katherine W. Brown, U. S. Department of Health & Human Services, Office of General Counsel, Dallas, TX, for Defendant.

### *ORDER AND REASONS* [1]

BERRIGAN, District Judge.

## INTRODUCTION

On February 10, 2003, plaintiff/claimant Hospital Service District No. 1 of the Parish of Lafourche, doing business as Our Lady of the Sea General Hospital ("Our Lady of the Sea" or "the provider"), filed a complaint against Tommy Thompson, Secretary of the Department of Health and Human Services ("the Secretary" or "DHHS"), seeking review of the Secretary's decisions to deny reimbursement claims sought under the Medicare Supplementary Medical Insurance Program ("Medicare"). Currently, before the Court are cross motions for summary judgment.

Having reviewed the motions, the administrative record, and the applicable law, this Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion.

## BACKGROUND

Plaintiff's claims involved Psychiatric Partial Hospitalization ("PHP") services provided to eight Medicare beneficiaries,[2] specifically Martha Coker, Temise Collins, Thelma Exposito, Neola Hanna, Herrick Ledet, Roosevelt Lefort, Wallace Moulaison, and Viola Toups. Rec. Doc. 22, p. 3. The claims were initially denied by the Medicare fiscal intermediary ("the Intermediary"), and subsequently denied by Administrative Law Judge Jon Boltz ("the ALJ") following hearings held from September 16–17, 1999. Rec. Doc. 26, p. 2. Finally, the provider's claims were denied by the Departmental Appeals Board, which constituted the final administrative decision pursuant to 20 C.F.R. § 404.981. As such, it is undisputed that the provider exhausted its administrative remedies; therefore, this action is properly before this Court.

The provider argues that the Secretary's decisions are erroneous and should be reversed, to the extent that they are adverse to the beneficiaries, because 1) the ALJ's findings of fact are not supported by substantial evidence, 2) the ALJ erred in failing to attribute proper weight to the opinions of treating physicians, 3) the ALJ failed to grant the provider a Section 1879 waiver, and 4) the ALJ failed to properly act on provider's objection to the testimony of expert witness, Dr. Poreda.

---

1. Paula M. Cino, a third year law student at Tulane Law School, assisted with the research and preparation of this decision.

2. PHP services are reimbursable pursuant to 42 U.S.C. §§ 1395k, 1395n(a)(2)(F) and 1395x(ff). The PHP consists of less than 24 hour, intensive ambulatory treatment, involving individual, group, and/or occupational therapy. 42 C.F.R. §§ 410.2 and 410.43(a).

## APPLICABLE LEGAL STANDARDS

*Substantial Evidence Standard*

All parties agree that a "substantial evidence" standard of review applies in this case. Rec. Doc. 22, p. 6; Rec. Doc. 26, p. 5. As such, this Court's review is limited to two issues: 1) whether the Secretary applied the proper legal standards; and 2) whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Estate of Camille Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *see also* 42 U.S.C. § 405(g). Therefore, a court may not overturn a Secretary's decision, which is supported by substantial evidence constituting "more than a mere scintilla" and correctly applies the law. *Estate of Camille Morris*, 207 F.3d at 745; *see also Id.* at 746 n. 3 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (defining substantial evidence as requiring such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).

*Requirements of the Medicare Act*

1. *Physician Certification*

Under the Medicare Act, eligibility for PHP services is contingent upon physician certification that a beneficiary would require inpatient psychiatric care in lieu of partial hospitalization. *See* 42 U.S.C. § 1395n; 42 C.F.R. § 410.110; 42 C.F.R. § 424.24(e)(1). In this case, the ALJ found that seven of the eight beneficiaries lacked this requisite physician certification. As such, this constituted grounds for a technical denial of the beneficiaries' claims. Nonetheless, the ALJ evaluated the evidence of record, and seemingly based his denials solely on a lack of reasonableness and medical necessity.

Defendant argues that the claim denials at issue were properly supported by substantial evidence, given that the ALJ could have justified denial purely on statutory grounds. Conversely, Plaintiff contends that a technical denial would not have been appropriate here, as evidenced by the ALJ's choice to conduct a full evaluation of the record. However, as explained above, the ALJ based his findings on a review of the medical record. (Since those decisions are supported by substantial evidence, it is unnecessary for this Court to address the legitimacy or proper usage of a technical denial at the administrative hearing level.)

2. *Reasonable and Necessary Requirement*

The Medicare Act provides that reimbursement will be withheld for services rendered that are not "reasonable and necessary for the diagnosis or treatment of illness or injury to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). Further, reimbursable treatment must be reasonably expected to improve or maintain a beneficiary's condition and functional level to prevent relapse or hospitalization. 42 U.S.C. § 1395x(ff)(2)(1). In the instant case, the ALJ concluded that the services rendered to the beneficiaries' during the denied claims periods were not reasonable or necessary for the treatment or maintenance of the individual's condition.

## TREATING PHYSICIAN RULE

■ Although this case involves Medicare reimbursement claims, Plaintiff argues that the "treating physician rule" used in Social Security disability cases is equally applicable here. However, even the Plaintiff concedes that there is no jurisprudential authority mandating the import of the treating physician rule in Medicare cases. Rec. Doc. 24, p. 19. Further, Plaintiff has exaggerated the weight of authority suggesting the applicability of the treating physician rule in the Medicare context. *Id.* Plaintiff's reliance of Second

Circuit authority is misplaced here for two reasons: 1) the treating physician rule as interpreted by the Second Circuit is incongruous with Fifth Circuit treating physician rule jurisprudence,[3] and 2) the Second Circuit has never held that the treating physician rule applies to Medicare determinations, and it has held that those cases suggesting the existence of such applicability may constitute mere dicta, which actually contradict prior Second Circuit authority.[4] Nevertheless, Plaintiff contends that the ALJ erred in failing to attribute controlling weight to the opinions of the beneficiaries' treating physicians. Rec. Doc. 24, p. 19.

▇▇▇ In the context of Social Security disability determinations, a treating physician's opinion of a claimant's condition is afforded considerable weight in evaluating disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). However, a treating physician's opinion is not dispositive, and

its significance is tempered by the caveat that a treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As such, an ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000) (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir.1994)); *see also Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir.1999) (stating that treating physician's opinions are not conclusive). Ultimately, an ALJ may discount a treating physician's opinion, and assign it little or no weight, for good cause. *Newton*, 209 F.3d at 455–56 (citing *Greenspan*, 38 F.3d at 237). Good cause includes instances where the physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic

3. The Second Circuit has arguably the most extensive caselaw relating to the treating physician rule. However, the Second Circuit's interpretation considerably conflicts with Fifth Circuit precedent on the subject. Most notably, while Second Circuit law provides that a treating physician's opinion is entitled to extra weight, even if it is contradicted by substantial evidence, *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991), the Fifth Circuit has held that a treating physician's opinion may be afforded lesser or no weight when confronted with the contradictory opinion of even a non-examining, consulting physician. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987); *see also Griego v. Sullivan*, 940 F.2d 942 (5th Cir.1991).

4. The Second Circuit has recognized the possibility that "some version of the treating physician rule could well apply in Medicare cases." *Keefe v. Shalala*, 71 F.3d 1060, 1064 (2d Cir.1995); *see also State of New York v. Sullivan*, 927 F.2d 57, 60 (2d Cir.1991).

However, it has never definitively held such. Further, more recent Second Circuit jurisprudence suggests that if their courts were directly confronted with the issue, the treating physician rule would not apply to Medicare determinations.

> At one time, the Second Circuit opined that [the treating physician rule] *might* also apply in Medicare reimbursement proceedings . . . However, the Second Circuit has never so held, and the Secretary argues that this speculative dicta contradicts a prior Second Circuit case, which held that the treating physician rule did not apply in Medicare reimbursement cases, because the Secretary has validly codified a different rule of proof. The Secretary appears to have the better of this argument, but ultimately it is not necessary to reach this question.

*Murphy v. Secretary of Health & Human Services*, 62 F.Supp.2d 1104, 1107 (S.D.N.Y. 1999) (emphasis in original) (citations omitted).

techniques, or otherwise unsupported by the record. *Id.*

■ Even if this Court applied the treating physician rule to this action, this Court finds that the ALJ properly applied the law in this matter. This is not a case of uncontested medical opinion, nor is there any indication that the ALJ supplanted his own lay opinion for that of a medical source. Here, the ALJ was faced with opinions from treating physicians, and contradictory opinions from another, albeit non-examining, physician, which were supported by reference to the medical record. As such, Plaintiff is simply asking this Court to re-weigh the evidence to determine which of two conflicting opinions to accept. This is inconsistent with the well-established principle that the Secretary, not the judiciary, is responsible for weighing the evidence, resolving material conflicts, and deciding cases. *See Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir.1987); *see also Johnson v. Bowen,* 864 F.2d 340, 346–47 (5th Cir.1988).

## BENEFICIARIES

### Martha Coker

■ Upon admission to the PHP, Ms. Coker was diagnosed with mild mental retardation, major depression, and obsessive-compulsive disorder. (Adm.Rec.752–754). The ALJ acknowledged that Ms. Coker benefited from a short readmission to the PHP, to assess her condition and evaluate appropriate treatment methods. (Adm.Rec.732). As such, the ALJ determined that brief participation in the PHP was necessary and appropriate, and therefore reimbursed the provider for services rendered from August 9 through August 31, 1996. (Adm.Rec.734–35). However, the ALJ denied Ms. Coker's PHP claims for the period following September 1, 1996. (Adm.Rec.734). The record shows that the ALJ based his decision on the expert testimony provided at hearing (Dr. Poreda) and the program's progress notes. (Adm. Rec.732).

At hearing, Dr. Poreda testified that Ms. Coker's diminished cognitive abilities and attention span inhibited her ability to benefit from PHP. (Adm.Rec.2190). While Dr. Poreda was aware that Ms. Coker's global assessment functioning score increased from 25 to 45, she ultimately opined that the beneficiary did not benefit from PHP treatment. (Adm.Rec.2195). Further, the program's witness conceded that Ms. Coker's behavioral problems were best treated through behavioral modification, which would have been available at Ms. Coker's nursing home facility following an instructional period. (Adm.Rec. 2180–81, 2194–95). Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

### Temise Collins

■ Ms. Collins diagnoses included major depression, hypertension, bladder infections, gout, and anemia. (Adm.Rec. 2255). Ms. Collins participated in the PHP from November 1996 through February 1997. The Intermediary reimbursed the provider for Ms. Collins' expenses between November 1996 and January 1997, but her claims for PHP services for February 1 through February 13, 1997 were denied. (Adm.Rec.666). The ALJ concluded that PHP treatment failed to benefit Ms. Collins after February 1 based on Dr. Poreda's testimony and a review of the facility's program notes.

Dr. Poreda opined that the PHP ceased to serve as a source of therapy after January 1997; rather, the PHP satisfied Ms. Collins' custodial or social needs, as evidenced by her history of noncompliance

with scheduled treatment. (Adm.Rec. 2262). Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

*Thelma Exposito*

█ Ms. Exposito sought treatment for mild dementia with depression and agitation. (Adm.Rec.2270). Based on the expert testimony of Dr. Poreda and the facility's progress notes, the ALJ determined that, although brief participation in PHP services benefitted Ms. Exposito in July 1997 (which was previously paid by the Intermediary), she failed to benefit from the PHP between August 1997 and October 1997. (Adm.Rec.846, 850). While Ms. Exposito's treating physician, Dr. Kenneth Smith, evaluated this beneficiary and repeatedly recommended PHP, Dr. Poreda offered a contrary opinion at hearing, which was supported by the medical record.

Dr. Poreda characterized dementia as a cognitive impairment, which impacts an individual's ability to benefit from treatment and notably group therapy. (Adm. Rec.2280, 2287–90). Accordingly, the ALJ noted that the record reflects that Ms. Exposito experienced an exacerbation of symptoms, which evidenced a continued struggle with dementia. (Adm.Rec.850–51, 894, 901–02, 905). As such, Dr. Poreda opined that Ms. Exposito could not fully benefit from PHP treatment, and suggested that outpatient or nursing home treatment was more appropriate. (Adm. Rec.2281–82). At hearing, even Claimant's counsel conceded that "we all understand that ultimately the best placement for the patient was in a nursing home." (Adm.Rec.2283). The record indicates that Ms. Exposito participated in PHP treatment for "custodial care" purposes, since the beneficiary refused admission to a nursing home, despite her daughter's inability to care for her. (Adm.Rec.2283, 2274–75). Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

*Neola Hanna*

█ In February 1996, Ms. Hanna was admitted to the PHP suffering from major depression and delusions. (Adm.Rec.7, 21–22). All parties agree that Ms. Hanna benefitted from PHP services between February and June 1996, but the ALJ concluded that PHP treatment after July 1, 1996 was not reasonable and necessary, because Ms. Hanna's condition had stabilized prior to that date. (Adm.Rec.6, 18–19). To that end, Dr. Poreda opined that Ms. Hanna failed to benefit from PHP services after July 1, 1996, since she obtained her maximum level of improvement prior to July 1996. (Adm.Rec.2119). This testimony was supported by the medical record, which reflected improvements in Ms. Hanna's activities of daily living ("ADL's") and coping skills, and that her depression was controlled by medication, prior to July 1996. (Adm.Rec.16, 2117–18). Further, Ms. Hanna failed to fully participate in the intensive PHP treatment. (Adm.Rec.2119). As such, Dr. Poreda concluded that she could have received all necessary treatment in a nursing home environment. (Adm.Rec.2118). It is notable that Ms. Hanna was a nursing home resident which is a structural setting with immediate medical care. Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

*Herrick Ledet*

■ Upon admission to the PHP, Mr. Ledet was diagnosed with adjustment disorder, mild to moderate organic brain syndrome, and poor impulse control. (Adm. Rec.1636). The Intermediary paid claims for PHP admission between February and June 1996, and the ALJ rendered a favorable opinion for the claims arising between July 1 and July 31, 1996. However, the ALJ denied claims for the period from August 1, 1996 through February 17, 1997, concluding that Mr. Ledet's condition had sufficiently stabilized prior to July 31, 1996. (Adm.Rec.1616–1617).

Dr. Poreda explained that Mr. Ledet's condition was exacerbated by delirium and a combination of medication interactions, evidenced by his marked improvement following an adjustment of his medications. (Adm.Rec.2083). As such, Dr. Poreda testified that beneficiary's improvements were a result of proper medication management, not PHP services. Further, Dr. Poreda opined that Mr. Ledet failed to benefit from the PHP services due to his diminished cognitive functioning, and that a less intensive setting would have better suited him. (Adm.Rec.2084–85). Notably, an examining physician, Dr. Birdsall, diagnosed Mr. Ledet with Alzheimer disease, but Dr. Palazzo rejected this diagnosis and did not believe that Ledet's dementia would inhibit his participation on the program. Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

*Roosevelt Lefort*

■ During PHP treatment, Mr. Lefort suffered from organic mood disorder, history of substance and alcohol abuse, and schizophrenia. (Adm.Rec.2124, 2127). After determining that Mr. Lefort could not benefit from PHP services, the ALJ denied reimbursement claims for the following periods: June 24–28, 1996; July 1–16, 1996; July 25–29, 1996; August 1–15, 1996; October 16—December 31, 1996; and January 1–17, 1997. The record reflects that Mr. Lefort was noncompliant with his PHP behavioral contract and medication regimen, and aggressive towards PHP staff. (Adm.Rec.1444, 1449, 1481, 1487, 1493, 1529, 1545, 1547, 1549, 2127, 2130, 2144).

Further, he continued to abuse cocaine, heroin, prescription medication, and alcohol during the PHP program. (Adm.Rec. 1406, 1438, 1445, 1449, 1480, 1481, 1493, 1546, 2130, 2131, 2143, 2146). Dr. Poreda explained that Mr. Lefort's continual substance abuse, actively psychotic state, and personality disorder prevented him from receiving any benefit from PHP treatment, and that he was a "totally inappropriate candidate for the PHP." (Adm.Rec.2144, 2146). Further, even the hospital's witness, Ms. Granier, testified that she disagreed with the treating physician's decision to continue PHP, and believed that Mr. Lefort required inpatient treatment. (Adm.Rec.2132). She testified that Mr. Lefort's substance abuse and psychosis made PHP treatment difficult, and went on to say that "[Mr. Lefort] should have been administratively discharged earlier." (Adm.Rec.2142). Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

*Wallace Moulaison*

■ Mr. Moulaison was diagnosed with depression with psychosis and a history of stroke. (Adm.Rec.1211). The ALJ concluded that although PHP was reasonably necessary through December 1996, Mr. Moulaison's failed to benefit from PHP services after December 31, 1996, and

therefore denied claims between January 1, 1997 and April 1, 1997. Plaintiff contends that Mr. Moulaison benefitted from PHP services, as evidenced by his improved activities ADL's and increased global assessment functioning ("GAF") at discharge.

However, the ALJ did not contest this, and in fact agreed that PHP services were reasonable and necessary between October and December 1996. Dr. Poreda testified that Mr. Moulaison achieved a maximum level of recovery by mid-December 1996, and that his condition after that point could have been maintained in a non-PHP setting. (Adm.Rec.2052–2054). In support of Dr. Poreda's opinion, the record reflects that, by December 31, 1996, Mr. Moulaison demonstrated an increased initiation of tasks and ADL's, increased socialization, increased affect, and zero episodes of poor impulse control during group sessions. (Adm.Rec.1215, 1220). Further, he exhibited diminished aggressive behavior, and a resolution of his grief reaction. (Adm.Rec.2051). Further, Plaintiff offered no evidence to contradict Dr. Poreda's assertion that all PHP benefits to Mr. Moulaison had matured by December 1996. Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

*Viola Toups*

█ Ms. Toups was diagnosed with depression and mild organic brain syndrome. (Adm.Rec.133, 2153). The ALJ concluded that PHP treatment was not reasonable and necessary after September 16, 1996, and therefore, denied reimbursement for the period September 16, 1996 through January 17, 1997. The medical record, including the treating physician's notes, reflects improvements in Ms. Toups' affect and social interaction prior to September

16, 1996. (Adm.Rec.262, 241, 250–53, 269, 277–79, 307, 313, 319). Further, Dr. Poreda noted that without documentation regarding the extent of Ms. Toups' organic brain syndrome, it was difficult to determine if she could have ever received benefit from PHP services. (Adm.Rec.2171–2172). Thus, the ALJ's determination that the beneficiary's treatment was not reasonable and necessary after September 16, 1996 is adequately supported by the record; therefore, the ALJ's denial of the provider's claims is sustained.

**OBJECTION TO EXPERT WITNESS**

Plaintiff next argues that the ALJ erred in failing to grant Plaintiff's objection to the professional qualifications of the expert witness, Dr. Poreda. Rec. Doc. 24, p. 22. However, Defendant contends that Plaintiff failed to properly object to the expert's qualification at hearing, and in fact acknowledged the expert's credentials in the applicable area of practice. Rec. Doc. 22, p. 21. The record reflects that Plaintiff's counsel questioned the nature of Dr. Poreda's experience in treating PHP patients. (Adm.Rec.2054). Dr. Poreda explained that she participated in a geriatric psychiatry fellowship, which involved a PHP treatment program. *Id.* Then, after clarifying that Dr. Poreda's previous experience did not involve Plaintiff's hospital, Plaintiff's counsel ended the inquiry into Dr. Poreda's qualifications. As such, at no time did Plaintiff object to Dr. Poreda's qualifications, or professional capacity to serve as the Secretary's expert.

█ Nonetheless, even if Plaintiff's inquiry was construed as a proper objection to the testimony of Dr. Poreda, the ALJ committed no legal error in admitting the testimony of Dr. Poreda. In addition to Dr. Poreda's academic and general psychiatric qualifications, Plaintiff's own questioning revealed that she did in fact have

PHP experience. Further, the record does not support Plaintiff's contention that Dr. Poreda possessed a pre-existing prejudice towards Plaintiff or PHP treatment in general.

## 1879 WAIVER

Finally, Plaintiff argues that the ALJ erred in failing to grant Plaintiff a section 1879 waiver, since Plaintiff did not know, and could not reasonably have been expected to know that the contested PHP claims were not reimbursable under Medicare.

Section 1879 of the Social Security Act provides that a beneficiary will be shielded from liability if the beneficiary had no reason to know that the services administered were not covered by Medicare. 42 U.S.C. § 1395pp(a). Further, if the Secretary determines that a provider knew or had reason to know that a payment would not be made for certain services, but the beneficiary had no such knowledge, the Secretary may indemnify the beneficiary and recover from the provider. 42 U.S.C. § 1395pp(b); *see also Doerr v. Chater*, 937 F.Supp. 775, 780 (C.D.Ill.1995). This indemnification is only available in two situations, one of which is a denial based on 42 U.S.C. § 1395y(a)(1) (reasonable and necessary requirement).

 Plaintiff argues that they could not reasonably have known that the aforementioned claims would not be covered because they were following the unrevised guidelines in place at the time services were rendered. However, this argument is without merit, since both the original and revised guidelines contained a "reasonable and necessary" requirement. Further, it is not unreasonable to expect a provider to know when the medical services rendered are reasonable and necessary. Therefore, this Court concludes that

the ALJ did not err in failing to grant Plaintiff a section 1879 waiver.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment is **GRANTED** Plaintiff's Motion for Summary Judgment is **DENIED**.